[No. B013562. Second Dist., Div. One. Sept. 23, 1986.]

FRANK BARNEY, as Executor, etc., Plaintiff and Appellant, v.
AETNA CASUALTY AND SURETY COMPANY,
Defendant and Respondent.

968

**COUNSEL**

A. Tod Hindin for Plaintiff and Appellant.

Haight, Dickson, Brown & Bonesteel, Gary C. Ottoson, Roy G. Weatherup, Barry Z. Brodsky and Jose H. Garcia for Defendant and Respondent.

OPINION

SPENCER, P. J.—

INTRODUCTION

Frank Barney (plaintiff) as executor of the estate of Ethel Barney, deceased, appeals from a judgment of dismissal on the pleadings, granted without leave to amend, in favor of defendant and respondent Aetna Casualty and Surety Company (Aetna). Judgment was granted on the ground the complaint does not state a cause of action against Aetna for either breach of the covenant of good faith and fair dealing or civil conspiracy to commit legal malpractice.

STATEMENT OF FACTS

In May 1972, Aetna issued to Ethel Barney an assigned risk automobile liability policy which provided that Aetna would "pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of: . . . injury to or destruction of property, . . . arising out of the ownership, maintenance or use of the owned automobile or any non-owned automobile, and the Company shall defend any suit alleging such bodily injury or property damage and seeking damages which are payable under the terms of this policy, . . . but the Company may make such investigation and settlement of any claim or suit as it deems expedient."

On September 11, 1972, Ethel Barney was involved in an automobile collision caused by the negligent operation of a vehicle by Emma Yoakum. Ethel Barney was taken by ambulance from the scene of the accident to the hospital. From there, within 48 hours after the accident, she notified Aetna of the accident and of her opinion Yoakum was at fault. She also filled out and delivered to Aetna a California Department of Motor Vehicle form S-R1, indicating negligence of Yoakum was the cause of the collision. On September 14, 1972, Barney retained Milton Phillips as her personal attorney to represent her in her personal injury claim against Yoakum.

On September 22, 1972, Yoakum filed in municipal court a personal injury and property damage action against Barney. The summons and complaint were served on Barney in October 1972 and immediately delivered

to Aetna through its agent. On or about October 12, 1972, Barney, through her attorney, again advised Aetna of her injuries and her claim against Yoakum.

On March 7, 1973, Aetna retained insurance defense Attorneys Buck & Smith to defend Barney in the Yoakum action. Aetna instructed Buck & Smith to provide a limited defense and to file an answer to the complaint but not a cross-complaint for Barney's injuries. At no time did Aetna or Buck & Smith advise Barney that if she did not file a cross-complaint she would lose her claim against Yoakum.

In May 1973, Aetna, through its managerial employees, entered into a settlement agreement with Yoakum whereby it agreed to pay Yoakum $600. As a condition thereof, Aetna required Yoakum to execute a release and dismissal with prejudice. Aetna effected this settlement agreement without the knowledge or consent of Barney or her attorney and "caused to be filed" the dismissal with prejudice on June 23, 1973. Buck & Smith actually filed the dismissal with prejudice either at the direction of Aetna or pursuant to a common plan to save Aetna costs of litigation.

Neither Barney nor her attorney were notified of the filing of the dismissal with prejudice. On September 11, 1973, Barney filed against Yoakum in superior court. In April 1976, Yoakum moved for summary judgment on the ground the dismissal with prejudice of the Yoakum action operated as a retraxit barring Barney's superior court action. Summary judgment was entered on August 20, 1976.

PROCEDURAL BACKGROUND

On August 3, 1977, Ethel Barney filed her first amended complaint against Aetna and Buck & Smith, alleging breach of the covenant of good faith and fair dealing and civil conspiracy. Ethel Barney died on April 20, 1980, and Frank Barney, as executor of her estate, was substituted in as plaintiff, pursuant to court order. By leave of court, plaintiff filed a first amendment to the first amended complaint, alleging breach of fiduciary duty or legal malpractice against insurance defense counsel.

All parties stipulated to a bifurcation of the trial. The first phase of the trial was to determine liability for the auto collision between Ethel Barney and Emma Yoakum. The damages Barney sustained as a result of the collision were stipulated to be $11,399. The first phase of the bifurcated trial was tried to a jury in February 1983. The jury found by special verdict that Yoakum negligently caused the collision, that Barney was comparatively

negligent, and that the apportionment of fault was 80 percent for Yoakum and 20 percent for Barney.

In April 1983, pursuant to a settlement agreement, all causes of action against Buck & Smith were dismissed with prejudice. Prior to the second phase of the trial, Aetna, the only remaining defendant, filed its first motion for judgment on the pleadings on the ground the first amended complaint failed to state causes of action for breach of the covenant of good faith and fair dealing and civil conspiracy. A judgment on the pleadings was granted in favor of Aetna as to the bad faith cause of action and was denied as to the civil conspiracy cause of action. Shortly thereafter, Aetna filed its second motion for judgment on the pleadings as to the civil conspiracy cause of action. The motion was granted without leave to amend, and a judgment of dismissal was entered.

## CONTENTS

### I

Plaintiff contends a cause of action for breach of the implied covenant of good faith and fair dealing owed by an insurer to its insured survives the death of the insured.

### II

Plaintiff also contends the trial court erred in granting defendant's motion for judgment on the pleadings, in that the first amended complaint adequately alleges a cause of action for breach of the implied covenant of good faith and fair dealing.

### III

Plaintiff additionally contends the trial court erred in granting defendant's motion for judgment on the pleadings, in that the complaint adequately alleges a cause of action for civil conspiracy.

### IV

Plaintiff finally contends the trial court abused its discretion in refusing to give leave to amend and cure any defect in the pleadings.

DISCUSSION

I

Plaintiff initially contends a cause of action for breach of the implied covenant of good faith and fair dealing owed by an insurer to its insured survives the death of the insured. We agree.

Although this issue was raised and briefly discussed at the first hearing of defendant Aetna's motion for judgment on the pleadings, the trial court made no finding on this issue, nor does defendant address the issue in its brief on appeal. However, in that the issue is purely one of law presented by undisputed facts, this court may consider it as raised for the first time on appeal. (*Hale* v. *Morgan* (1978) 22 Cal.3d 388, 394 [149 Cal.Rptr. 375, 584 P.2d 512].)

Probate Code section 573 provides in pertinent part: "Except as provided in this section no cause of action shall be lost by reason of the death of any person but may be maintained by or against his executor or administrator. . . . [¶] When a person having a cause of action dies before judgment, the damages recoverable by his executor or administrator are limited to such loss or damage as the decedent sustained or incurred prior to his death, including any penalties or punitive or exemplary damages that the decedent would have been entitled to recover had he lived, and shall not include damages for pain, suffering or disfigurement."

Ethel Barney filed her original complaint against Aetna and Buck & Smith on April 19, 1977. She died on April 20, 1980, and Frank Barney, as executor of her estate, was substituted in as plaintiff, pursuant to court order. Thus, by the express terms of the statute, subject to its damages limitation, the instant action for breach of the covenant of good faith and fair dealing survives Ethel Barney's death.

II

Plaintiff also contends the trial court erred in granting defendant Aetna's motion for judgment on the pleading, in that the first amended complaint adequately alleges a cause of action for breach of the implied covenant of good faith and fair dealing. We agree.

Preliminarily, we discuss the applicable standard of review. A motion for judgment on the pleadings is tantamount to a general demurrer. (*Tiffany* v. *Sierra Sands Unified School Dist.* (1980) 103 Cal.App.3d 218, 224 [162 Cal.Rptr. 669]; accord, *MacIsaac* v. *Pozzo* (1945) 26 Cal.2d 809,

812 [161 P.2d 449].) Upon appellate review, the standard for a judgment on the pleadings is the same as for a judgment of dismissal following a general demurrer. (*Tiffany, supra,* at p. 225.) Review is limited to the facts alleged in the complaint. Those facts must be accepted as true, and a judgment on the pleadings may be upheld only if the complaint, liberally construed, fails to state a cause of action on any theory. (*Wolfrich Corp.* v. *United Services Automobile Assn.* (1983) 149 Cal.App.3d 1206, 1209 [197 Cal.Rptr. 446].)

■ The law implies in every contract, including policies of insurance, a covenant of good faith and fair dealing. (*Egan* v. *Mutual of Omaha Ins. Co.* (1979) 24 Cal.3d 809, 818 [169 Cal.Rptr. 691, 620 P.2d 141]; *Comunale* v. *Traders & General Ins. Co.* (1958) 50 Cal.2d 654, 658 [328 P.2d 198, 68 A.L.R.2d 883]; *Betts* v. *Allstate Ins. Co.* (1984) 154 Cal.App.3d 688, 705 [201 Cal.Rptr. 528].) "The precise nature and extent of the duty imposed by such an implied promise will depend on the contractual purposes." (*Egan, supra,* at p. 818.)

■ The contractual purposes of the automobile liability policy in the instant case are set forth in its liability provision which states in pertinent part: "To pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of: . . . injury to or destruction of property, . . . arising out of the ownership, maintenance or use of the owned automobile or any non-owned automobile, and the Company *shall* defend any suit alleging such bodily injury or property damage and seeking damages which are payable under the terms of this policy, . . . but the Company *may* make such investigation and settlement of any claim or suit as it deems expedient." (Italics added.) Thus, by the express terms of the policy, the insurer's duty to indemnify and defend is mandatory; the duty to settle is discretionary, as the insurer deems expedient. ■ "'[W]here a contract confers on one party a discretionary power affecting the rights of the other, a duty is imposed to exercise that discretion in good faith and in accordance with fair dealing.'" (*Spindle* v. *Travelers Ins. Companies* (1977) 66 Cal.App.3d 951, 958 [136 Cal.Rptr. 404], quoting from *Cal. Lettuce Growers* v. *Union Sugar Co.* (1955) 45 Cal.2d 474, 484 [289 P.2d 785, 49 A.L.R.2d 496].)

In the first amended complaint, plaintiff alleges, inter alia, the following: She advised Aetna of the accident on September 13, 1972, within 48 hours after the occurrence. The next day, September 14, she retained Attorney Phillips to prosecute a personal injury claim against Yoakum, the driver of the other automobile. On October 18, plaintiff filled out California Department of Motor Vehicle form S-R1 and delivered the form to Aetna's agent. On the form, plaintiff indicated the cause of the collision to be the

negligent operation of the vehicle driven by Yoakum. On September 22, 1972, Yoakum filed an action for personal injuries and property damage against plaintiff in municipal court. On October 12, plaintiff, through Attorney Phillips, notified Aetna in writing of her personal injury claim against Yoakum. On March 7, 1973, Aetna employed Attorneys Buck & Smith to defend plaintiff in the Yoakum action. Aetna instructed Buck & Smith to conduct a limited defense and to answer the complaint without filing a cross-complaint on behalf of Barney and without advising Barney of the necessity of filing such cross-complaint. On May 11, 1973, Aetna, "through its managerial employees . . ., without informing the plaintiff, without interviewing the plaintiff, without communicating with the plaintiff's attorney, Milton Phillips, Inc., without the consent of the plaintiff, and for the sole purpose of minimizing its expenses of defense, entered into a settlement agreement with Emma Lee Yoakum whereby it agreed to pay said Emma Lee Yoakum the sum of $600 and, as a condition thereof, required Emma Lee Yoakum to execute a General Release in favor of plaintiff of all claims, and to execute a Dismissal with Prejudice of the aforementioned Municipal Court action." Aetna "caused to be filed the aforementioned Dismissal with Prejudice with actual knowledge that by entering into the . . . settlement agreement and by demanding a Dismissal with Prejudice . . . and by filing the same . . . that said settlement agreement would operate as a retraxit . . . and cause the plaintiff to lose her substantial claim for personal injuries [against Yoakum]."

As defendant asserts, the allegations themselves establish Aetna met its obligation under the contract to defend and indemnify Barney by employing on her behalf Attorneys Buck & Smith and by settling the claim within policy limits. As to the allegation Aetna instructed Buck & Smith to conduct a limited defense by only answering the complaint, it is a well-known fact "that under insurance policies generally the insurer controls the defense it provides its insured" and there is "nothing improper in this customary practice." (*Spindle* v. *Chubb/Pacific Indemnity Group* (1979) 89 Cal.App.3d 706, 714 [152 Cal.Rptr. 776].) Moreover, Aetna had no duty under the policy to file a cross-complaint on Barney's behalf, for nothing in the policy provisions imposes upon the insurer the duty to prosecute claims of the insured against third parties.

Nonetheless, plaintiff cites guiding principles of the 1970 American Bar Association National Conference of Lawyers and Liability Insurers concerning an insurer's treatment of an insured's counterclaims. Section VII of those principles states: "The insured should be advised that the pending suit may affect or impair such claims; that the insurance policy does not provide coverage for any legal service or advise as to such claims; and that the insured may wish to consult an attorney of his choice with respect to it."

As defendant again points out, even had these guiding principles the force of law, the allegations make clear Barney knew she had a claim against Yoakum and retained independent counsel three days after the accident to prosecute that claim. Thus, the matter already was in the hands of plaintiff's independent counsel. Aetna, therefore, was relieved of any duty to advise plaintiff of the effect of the pending Yoakum action upon her claim against Yoakum. Hence, nothing in these allegations, standing alone, gives rise to the issue of bad faith.

While the foregoing points are well taken, they are not dispositive, for the allegations relied upon do not stand alone. The gravamen of the complaint is that Aetna, with knowledge of plaintiff's substantial counterclaim against Yoakum, effected a settlement agreement, without plaintiff's knowledge and consent, which operated to bar forever that counterclaim. Thus, the seminal issue is whether these additional allegations denote actions of Aetna which amount to breach of its implied covenant to deal fairly and in good faith with plaintiff.

Since the concept of insurance bad faith tort liability was first enunciated in *Crisci* v. *Security Ins. Co.* (1967) 66 Cal.2d 425 [58 Cal.Rptr. 13, 426 P.2d 173], it has been applied typically in two types of claim settlement situations: (1) where an insurer unreasonably fails to settle third party claims against its insured (see, e.g., *Crisci, supra*) and (2) where an insurer fails to settle the direct claims of its insured (see, e.g., *Gruenberg* v. *Aetna Ins. Co.* (1973) 9 Cal.3d 566 [108 Cal.Rptr. 480, 510 P.2d 1032]). ■ In the more typical third party claim situation, a conflict of interest arises between insurer and insured when a third party claim is made in excess of policy limits. In such a situation, it will always be to the insured's advantage to have settlement effected within policy limits; the insurer, in deciding whether to compromise a claim, must consider the insured's best interests as much as its own. (*Egan* v. *Mutual of Omaha Ins. Co., supra,* 24 Cal.3d 809, 818-819.) It is well established that where settlement is the most reasonable manner of disposing of the claim, the insurer's refusal to settle constitutes a breach of the covenant of good faith and fair dealing. (*Crisci* v. *Security Ins. Co., supra,* 66 Cal.2d 425, 429 [58 Cal.Rptr. 13, 426 P.2d 173].)

■ More recently, however, the bad faith concept has been expanded to include situations where an insurer fails to provide a benefit not specifically endemic to the policy provisions. (See, e.g., *Silberg* v. *California Life Ins. Co.* (1974) 11 Cal.3d 452 [113 Cal.Rptr. 711, 521 P.2d 1103] [failure to honor a promise contained in the policy application]; *Spindle* v. *Travelers Ins. Companies, supra,* 66 Cal.App.3d 951 [unreasonable cancellation of existing policy].) In these latter cases, the courts give emphasis to the

reasonable expectations of the insured and will look beyond the four corners of the policy to determine whether the insurer is liable for bad faith conduct. "'In short, the insurance company may not ignore its insured and then seek refuge in the fine print of its policy.'" (*Terzian* v. *California Cas. Indem. Exch.* (1974) 42 Cal.App.3d 942, 950 [117 Cal.Rptr. 284].)

This approach is founded upon public policy concerns relative to the adhesive nature of insurance contracts. (*Spindle* v. *Travelers Ins. Companies, supra,* 66 Cal.App.3d 951, 958-959.) Hence, "[o]bligations arising from such . . . contract[s] inure not alone from the consensual transaction but from the relationship of the parties." (*Gray* v. *Zurich Insurance Co.* (1966) 65 Cal.2d 263, 269, fn. omitted [54 Cal.Rptr. 104, 419 P.2d 168].) The relationship of insurer and insured being inherently unbalanced, "'[t]he obligations of good faith and fair dealing encompass qualities of decency and humanity inherent in the responsibilities of a fiduciary. Insurers hold themselves out as fiduciaries, and with the public's trust must go private responsibility consonant with that trust.' [Citation.]" (*Egan* v. *Mutual of Omaha Ins. Co., supra,* 24 Cal.3d 809, 820.)

 In the instant case, plaintiff alleges that Aetna, by virtue of its fiduciary power and discretionary authority under the policy to effect settlement, negotiated and effected a settlement agreement whereby the insured's right to counterclaim was exchanged, without her knowledge and consent, for a $600 limit in liability. Plaintiff asserts this conduct by Aetna breached the implied covenant of good faith and fair dealing. Defendant argues the insured's right to prosecute a claim against third parties is not a right under the policy and therefore the covenant of good faith and fair dealing does not come into play.

Defendant's interpretation of what constitutes a right under the policy is too narrow when viewed in light of the reasonable expectations of the insured. "[T]he rights of the insured 'go deeper than the mere surface of the contract written for him by [the insurer]' . . . ." (*Comunale* v. *Traders & General Ins. Co., supra,* 50 Cal.2d 654, 658, quoting from *Hilker* v. *Western Automobile Ins. Co.* (1930) 204 Wis. 1 [231 N.W. 257, 258], affd. on rehg (1931) 204 Wis. 12 [235 N.W. 413].) An insured reasonably expects that the insurer, in using the authority granted under the policy, will not knowingly effect a settlement which works to the detriment of the insured. The insured can hardly be said to have received any benefit from the policy of insurance if that benefit is totally voided by a countervailing detriment imposed upon him by the insurer without his consent.

The effect upon the insured and the insured's reasonable expectations is the same whether the detriment is in the form of liability in excess of policy

limits, as in the more typical cases, or in the form of derogation of a collateral right, as in the instant case. The derogation of plaintiff's collateral right to counterclaim against Yoakum deprived her of the policy's benefits as surely as if Aetna unreasonably had refused to indemnify, defend or settle at all; although plaintiff was relieved of $600 potential liability, she was at the same time denied all opportunity for redress of her own substantially greater injuries. Thus, by virtue of its fiduciary relationship, Aetna had a duty not to knowingly use its discretionary power under the policy to effect a settlement in a manner injurious of plaintiff's rights.

*Rothtrock* v. *Ohio Farmers Ins. Co.* (1965) 233 Cal.App.2d 616 [43 Cal.Rptr. 716] is directly on point and factually almost identical to the instant case. After an auto collision between plaintiff Rothtrock and one Miller, Miller filed an action in municipal court seeking $800 property damage. A summons and complaint were served upon Rothtrock who immediately delivered same to her insurer, Ohio. Rothtrock also advised Ohio she had a substantial personal injury claim against Miller. Negotiations commenced between Ohio and Miller's attorney. Without Rothtrock's knowledge or consent, it was agreed that Ohio would pay to Miller $250 in settlement in exchange for a release and a dismissal of the action with prejudice. The request for dismissal was prepared by Ohio's attorneys, signed by Miller's attorney and returned to Ohio who then filed it. The dismissal with prejudice of the municipal court action operated as a retraxit and barred Rothtrock's superior court action against Miller.

The *Rothtrock* court acknowledged that in negotiating the settlement agreement, Ohio was "acting for plaintiff under the authority granted in the contract of insurance . . . ." (At pp. 620-621.) The court, however, condemned Ohio's actions under such authority as "tainted with singular disregard of their assured's interests." (*Id.,* at p. 622.) "After being advised of plaintiff's claim against Miller for personal injuries, Ohio had no legal right to actively compromise her potential for legal recovery by its conduct in handling the municipal court action. It actively placed her in a losing position." (*Id.,* at p. 623.)

Defendant attempts to distinguish *Rothtrock* in two aspects. First, defendant points out that *Rothtrock* involved a negligence cause of action; second, defendant argues the mechanics by which the dismissal with prejudice was filed were different, in that in *Rothtrock* the insurer's in-house counsel actually filed the document while in the instant case, the insurer's independently retained attorneys did so. Defendant's first purported distinction is illusory. *Rothtrock* was, in fact, pleaded as a negligence cause of action; however, that the plaintiff chose to frame the cause of action in terms of negligence does not make the legal and factual analogy any less

perfect, for an insurer's handling of the defense for its insured may exhibit both aspects of negligence and intentional conduct or bad faith. The *Rothtrock* court clearly recognized the facts pleaded as characterizing intentional conduct: "[T]he violation of legal obligation to the Rothtrocks was compounded by the taking of positive and fatal action against their interests as distinguished from mere neglect. Defendants had two paths from which to choose . . . . Defendants voluntarily chose the dangerous path of dismissal with prejudice rather than the safe path of dismissal without prejudice plus a release." (*Id., at pp. 622-623.*)

Defendant's second distinguishing factor also misses the mark. It is not who *filed* the dismissal with prejudice that is important, but who *caused* it to be filed. The complaint alleges, although Buck & Smith actually filed the dismissal with prejudice, it was Aetna which, without plaintiff's knowledge and consent, entered into the settlement agreement with Yoakum whereby it agreed to pay Yoakum $600 and, "as a condition thereof required [Yoakum] to execute a Dismissal with Prejudice" and "*caused* the same to be filed." (Italics added.) The focus here is upon the wrongful conduct of Aetna in effecting the settlement agreement which required the dismissal with prejudice to be filed.

Defendant's reliance upon *Merritt* v. *Reserve Ins. Co.* (1973) 34 Cal.App.3d 858 [110 Cal.Rptr. 511] is misplaced. In *Merritt,* the insurer employed defense counsel on behalf of its insured to defend against a claim in excess of policy limits. Defense counsel failed to adequately investigate the cause of the claim, failed to properly prepare for litigation and repeatedly advised both the insured *and the insurer* the matter was one of nonliability. The result was a judgment in favor of the claimant $334,000 in excess of policy limits. Merritt, the assignee of the insured, brought a bad faith action against the insurer on the theory it was vicariously liable as the employer of negligent defense counsel. The court held vicarious liability does not fall on an insurer who retains independent counsel on behalf of an insured when that counsel conducts the litigation negligently. (At pp. 881-882.)

The facts alleged in the instant case are clearly distinguishable. Plaintiff does not attempt to hold Aetna vicariously liable for any wrongful conduct of Attorneys Buck & Smith, but rather jointly liable for damages caused by concerted acts (see conspiracy discussion, *post*). Unless facts indicate otherwise, the implied covenant of good faith and fair dealing in insurance policies and the duties relative to claim settlement fall upon the insurer and not the defense attorney. (*Lysick* v. *Walcom* (1968) 258 Cal.App.2d 136, 149 [65 Cal.Rptr. 406, 28 A.L.R.3d 368].) Here, the complaint makes unequivocally clear that Aetna was in control of settlement negotiations,

Aetna negotiated the agreement, and Aetna effected the agreement by which plaintiff's rights were injured. This court is compelled to accept the allegations as true and need not be concerned with any problems of proof.

*Ivy* v. *Pacific Automobile Ins. Co.* (1958) 156 Cal.App.2d 652 [320 P.2d 140] also illustrates the situation where an insurer, purporting to perform its duty to settle, still may act in bad faith in effecting a settlement agreement not in the insured's best interests. In *Ivy,* the insurer, without the insured's knowledge or consent, stipulated to a $75,000 judgment against the insured which was $25,000 in excess of policy limits. The insurer purported to protect the insured by effecting an agreement to pay the claimant $25,000 in return for the claimant's covenant not to execute on the judgment, instead prosecuting an action against a second insurer for the balance. In the event the action against the second insurer was unsuccessful, the insurer would pay the claimaint an additional $17,500. When the insured brought a bad faith action, the insurer contended it had done its duty by protecting the insured from *execution* of the judgment. The appellate court noted: "This argument fails to consider the nature of the covenant and the duty the insurance company owed to its insured. . . . It would . . . have been up to [the insured] to decide whether he would be satisfied with a covenant not to execute against him, and, if not, what steps he wanted to take to protect his interest . . . . But he was never given this information, or this opportunity." (At p. 661.) The insured was deprived of his right to decide for himself whether to accept the covenant not to execute for his sole protection. (*Id.,* at p. 663.)

Although *Ivy* involved an excess liability situation, excess liability was not the issue, for the insurer had protected the insured from any excess liability. However, in doing so, the insurer had subjected the insured to another type of injury—denial of the right to decide for himself whether to accept the nonexecutable judgment. Similarly, in the instant case, plaintiff was deprived of the right to decide for herself whether to accept the dismissal with prejudice and the resulting bar of her substantial claim against Yoakum in return for a limit of $600 in her liability.

Defendant's reliance upon *Reid* v. *State Farm Mut. Auto. Ins. Co.* (1985) 173 Cal.App.3d 557 [218 Cal.Rptr. 913] as contrary authority also is misplaced. *Reid* holds, in the absence of notice, an insurer has no duty to investigate claims of the insured against third parties nor duty to preserve evidence of those claims. (At pp. 580-581.) The court's holding turns upon the fact that in *Reid* neither the insured nor the permissive user of an automobile notified the insurer of intent to file a claim against third parties. Moreover, the insurer's investigation of the accident revealed no possibility of such a claim. Thus, the insurer had neither actual nor constructive notice

of any claim against third parties and, therefore, no duty regarding such a claim.

In contrast, the instant complaint alleges plaintiff notified Aetna of her injuries *and* of her contention they were caused by Yoakum's negligent driving. Moreover, through her attorney, plaintiff specifically notified Aetna in writing of her claim against Yoakum. Thus, Aetna had both constructive and actual notice plaintiff intended to pursue her rights against Yoakum. Therefore, Aetna had a duty of good faith and fair dealing, by virtue of its fiduciary relationship, to do nothing to interfere with those rights.

### III

Plaintiff additionally contends the trial court erred in granting defendant's motion for judgment on the pleadings, in that the complaint adequately states a cause of action against Aetna for civil conspiracy. Again, we agree.

"'To state a cause of action for conspiracy the complaint must allege: (1) the formation and operation of the conspiracy; (2) the wrongful act or acts done pursuant thereto; and (3) the damage resulting. [Citations.]'" (*Wolfrich Corp.* v. *United Services Automobile Assn., supra,* 149 Cal.App.3d 1206, 1210, quoting from *Unruh* v. *Truck Insurance Exchange* (1972) 7 Cal.3d 616, 631 [102 Cal.Rptr. 815, 498 P.2d 1063].)

Plaintiff alleges Aetna and Buck & Smith agreed as "part of a scheme and plan" to save Aetna money, "to cause the . . . settlement to be consummated by [Buck & Smith's] filing with the Municipal Court" the request for dismissal with prejudice, resulting in the loss of plaintiff's substantial personal injury claim against Yoakum. Plaintiff further alleges "defendants, and each of them, took said action without first communicating with the plaintiff's attorney, . . . despite the fact they each knew that the plaintiff was being represented in the prosecution of her substantial personal injury claim by [her attorney] and took said action without obtaining the consent thereto of the plaintiff or advising the plaintiff . . . ."

Plaintiff has alleged the necessary agreement between Aetna and Buck & Smith, certain acts committed by Buck & Smith in furtherance of that agreement, and damages resulting from concerted acts. However, a cause of action for civil conspiracy cannot stand by itself, but must rest upon the successful allegation of an underlying wrong. (*Unruh* v. *Truck Insurance Exchange, supra,* 7 Cal.3d 616, 631.) In this cause of action, plaintiff focuses upon the alleged wrongful conduct of Buck & Smith and attempts to hold Aetna *jointly* liable under a conspiracy theory. Hence, *Merritt* v.

*Reserve Ins. Co., supra,* 34 Cal.App.3d 858 (discussed *ante*) is again inapplicable, in that *Merritt* holds only that insurers may not be held *vicariously* liable, under a theory of respondeat superior, for the negligent acts of attorneys they hire. Under a conspiracy theory, if the purpose of Buck & Smith's actions in failing to communicate with plaintiff or her attorney and in filing the dismissal with prejudice at the behest of Aetna was wrongful, then plaintiff has successfully alleged conspiracy against Aetna. "As long as two or more persons agree to perform a wrongful act, the law places civil liability for the resulting damage on *all* of them, regardless of whether they actually commit the tort themselves." (*Wyatt* v. *Union Mortgage Co.* (1979) 24 Cal.3d 773, 784 [157 Cal.Rptr. 392, 598 P.2d 45], italics in original; *Unruh, supra,* at p. 631.)

The duties concerning claim settlement normally fall upon the insurer and not the defense attorney; however, where an attorney is aware of a conflict of interest between his two clients, the insurer and the insured, he has a duty to disclose "all facts and circumstances . . . necessary to enable each of his clients to make free and intelligent decisions regarding the subject matter of the representation." (*Lysick* v. *Walcom, supra,* 258 Cal.App.2d 136, 151.) Here, it is alleged Buck & Smith knew plaintiff had a substantial claim against Yoakum and knew she was represented by counsel, yet in agreement with their own client, Aetna, filed the dismissal with prejudice and failed to communicate the necessary facts to plaintiff. █ An insurance defense attorney who carries out and consumates a bad faith settlement agreement effected by the insurer violates the fiduciary duty he owes to his other client, the insured. (*Ivy* v. *Pacific Automobile Ins. Co., supra,* 156 Cal.App.2d 652, 663.) Moreover, "[a]ttorneys may be liable for participation in tortious acts with their clients, and such liability may rest on a conspiracy. [Citations.]" (*Wolfrich Corp.* v. *United Services Automobile Assn., supra,* 149 Cal.App.3d 1206, 1211.) By parity of reasoning, an insurer may be held liable for participation in tortious acts with attorneys it hires on behalf of its insured. "Conspiratorial conduct on the part of insurers to avoid the contractual liability they undertake is not countenanced in California (see *Gruenberg* v. *Aetna Ins. Co.* [, *supra,*] 9 Cal.3d 566[]) . . . ." (*Spindle* v. *Travelers Ins. Companies, supra,* 66 Cal.App.3d 951, 958-959.)

█ Defendant argues, however, that plaintiff fails to state a cause of action for conspiracy, inasmuch as plaintiff dismissed all causes of action against Buck & Smith with prejudice, pursuant to a settlement agreement, prior to a motion for judgment on the pleadings. Defendant thus concludes there is no underlying wrong upon which to base the civil conspiracy allegation.

Defendant apparently misperceives the effect of a civil conspiracy allegation and its relation to a dismissal of one of the parties. The pleading of civil conspiracy is merely a procedural method of joining defendants (see 16 Am.Jur.2d, Conspiracy, p. 267 et seq.) and is superfluous when, as here, concurrent or successive acts are alleged, unless the plaintiff cannot show or prove each defendant committed a wrongful act or some part of it (see 5 Witkin, Cal. Procedure (3d ed. 1985) Pleading, § 869, pp. 310-311). The only significance of a civil conspiracy allegation is that it renders each participant responsible as a contributory tortfeasor whether or not he actually committed the wrongful act. (*Black* v. *Sullivan* (1975) 48 Cal.App.3d 557, 566 [122 Cal.Rptr. 119].) Contributory wrongdoers are jointly and severally liable for the same damage. (*American Motorcycle Assn.* v. *Superior Court* (1978) 20 Cal.3d 578, 586 [146 Cal.Rptr. 182, 578 P.2d 899].) Thus, the effect of dismissal of one of the contributory tortfeasors is the same as that attending the simple joinder of defendants in a single action without benefit of the procedural conspiracy allegation.

A release or dismissal, with or without prejudice, of one of several joint tortfeasors does not release the others. (Code Civ. Proc., § 877; *Stewart* v. *Cox* (1961) 55 Cal.2d 857, 861 [13 Cal.Rptr. 521, 362 P.2d 345].) Code of Civil Procedure section 877 "does not use the term 'joint tortfeasors.' Rather, it applies expressly to a release given to 'one or more of a number of tortfeasors claimed to be liable for the same tort.'" (*Ritter* v. *Technicolor Corp.* (1972) 27 Cal.App.3d 152, 154 [103 Cal.Rptr. 686].) The statute applies to defendants alleged to have committed separate wrongs (concurrent or successive) as well as to true joint tortfeasors. Accordingly, plaintiff's dismissal of all causes of action against Buck & Smith in no way affects any liability Aetna may have for plaintiff's damages.

## IV

Finally, plaintiff contends the trial court abused its discretion in refusing to give plaintiff leave to amend and cure any defect in the pleadings. In view of the conclusions reached above, we need not address this issue.

The judgment is reversed. Appellant to recover costs on appeal.

Lucas, J., and Epstein, J.,* concurred.

A petition for a rehearing was denied October 14, 1986, and respondent's petition for review by the Supreme Court was denied December 17, 1986.

---

*Assigned by the Chairperson of the Judicial Council.