Filed 4/19/22; Certified for Publication 5/16/22 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| NSHAN SIMONYAN, | C091100 |
| Plaintiff and Appellant, | (Super. Ct. No. 34201800240790CUBCGDS) |
| v. | |
| NATIONWIDE INSURANCE COMPANY OF AMERICA, | |
| Defendant and Respondent. | |

This dispute between Nshan Simonyan and his insurer, Nationwide Insurance Company of America (Nationwide), involves Nationwide's handling of his defense in an action arising out of a three-car accident in which Simonyan was a driver. Simonyan asked Nationwide to appoint, as *Cumis*[1] counsel, a law firm that he had already hired to advance his affirmative claim against the driver who hit him. Nationwide refused.

---

[1] *San Diego Federal Credit Union v. Cumis Ins. Society, Inc*. (1984) 162 Cal.App.3d 358 (*Cumis*).

1

Simonyan appeals from a judgment of dismissal after the trial court sustained Nationwide's demurrer to his second amended complaint without leave to amend. Simonyan argues his allegations were sufficient to state claims for breach of contract and breach of the implied covenant of good faith and fair dealing, and that the trial court abused its discretion in denying his motion to reconsider based on new allegations. We will affirm the judgment.

## I. BACKGROUND

In the operative complaint, Simonyan alleges that, on October 18, 2017, he came to a stop near an intersection and was rear-ended by a truck. He alleges the impact forced his car to hit the car in front of him.

At the time of the accident, Simonyan was insured by Nationwide. He contacted them to make a claim. He alleges that, after taking his statement regarding what happened, Nationwide made an internal decision that he was liable for causing the accident.

Simonyan retained Gavrilov & Brooks to represent him with respect to the collision. In December 2017, Simonyan filed suit against the driver of the truck that hit him.

In May 2018, Simonyan notified Nationwide that he had been sued by the driver of the car that he had hit. Under the terms of the policy, Nationwide had agreed to "pay damages for 'bodily injury' or 'property damage' for which any 'insured' becomes legally responsible because of an auto accident. . . . We will settle or defend, as we consider appropriate, any claim or suit asking for these damages. In addition to our limit of liability, we will pay all defense costs we incur." The policy requires Simonyan, as a person seeking coverage, to "[c]ooperate with [Nationwide] in the investigation, settlement or defense of any claim or suit."

Simonyan requested that Nationwide appoint Gavrilov & Brooks as *Cumis* counsel. Simonyan argued there was a conflict of interest between him and Nationwide

2

because Nationwide had already determined he was liable for causing the accident. Further, he argued Gavrilov & Brooks was already familiar with the case. Nationwide denied there was a conflict of interest, but agreed to appoint outside counsel "as an accommodation to the insured's concerns." Nationwide appointed the law firm of Porter Scott. Simonyan complained this failed to correct the alleged conflict of interest and created a new conflict of interest because Nationwide often retains Porter Scott, and the law firm "would have an incentive to litigate in a way that would cause [Nationwide] to send the firm more work." Simonyan further contended representation by two law firms would hinder his ability to receive fair treatment at trial and complicate the discovery process.

Nationwide replied that it would not pay for Gavrilov & Brooks as *Cumis* counsel and demanded that Simonyan cooperate with Porter Scott and Nationwide, or else Nationwide would decline to pay any defense costs or judgments against him in the defense action. Nationwide stated its internal decision that Simonyan was at fault for the collision was not a final decision and it had a financial interest in vigorously defending him.

Several months later, in October 2018, Nationwide raised Simonyan's policy premiums based on its determination that he was at fault for the October 2017 collision and removed various discounts.

In the interim, Simonyan had initiated this action against Nationwide. The original complaint and the second amended complaint both allege two causes of action: (1) breach of the implied covenant of good faith and fair dealing, and (2) breach of contract.

Nationwide demurred to the second amended complaint on the grounds that neither cause of action stated facts sufficient to constitute a cause of action. The trial court sustained the demurrer without leave to amend.

3

Simonyan filed a motion for reconsideration based on Porter Scott's subsequent refusal to sign a substitution of attorney allowing Gavrilov & Brooks to withdraw from the action. The court denied the motion.

The court entered judgment dismissing Simonyan's second amended complaint with prejudice. Simonyan filed a timely appeal.

## II. DISCUSSION

### A. Standard of Review

"It is well established that a demurrer tests the legal sufficiency of the complaint. [Citations.] On appeal from a dismissal entered after an order sustaining a demurrer, we review the order de novo, exercising our independent judgment about whether the petition states a cause of action as a matter of law. [Citations.] We give the petition a reasonable interpretation, reading it as a whole and viewing its parts in context. [Citations.] We deem to be true all material facts that were properly pled. [Citation.] We must also accept as true those facts that may be implied or inferred from those expressly alleged. [Citation.] We may also consider matters that may be judicially noticed, but do not accept contentions, deductions or conclusions of fact or law." (*City of Morgan Hill v. Bay Area Air Quality Management Dist.* (2004) 118 Cal.App.4th 861, 869-870; see also *Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)

"If the court sustained the demurrer without leave to amend, as here, we must decide whether there is a reasonable possibility the plaintiff could cure the defect with an amendment. [Citation.] If we find that an amendment could cure the defect, we conclude that the trial court abused its discretion and we reverse; if not, no abuse of discretion has occurred. [Citation.] The plaintiff has the burden of proving that an amendment would cure the defect." (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081.)

We review a trial court's ruling on a motion for reconsideration under the abuse of discretion standard. (*New York Times Co. v. Superior Court* (2005) 135 Cal.App.4th 206, 212.)

4

*B.    Breach of Contract*

Simonyan argues he sufficiently pled a breach of contract claim based on Nationwide's refusal to provide independent counsel. The second amended complaint alleged this refusal is a breach of Nationwide's contractual duty to defend.

"Generally, an insurer owing a duty to defend an insured, arising because there exists a potential for liability under the policy, 'has the right to control defense and settlement of the third party action against its insured, and is . . . a direct participant in the litigation.' [Citations.] The insurer typically hires defense counsel who represents the interests of both the insurer and the insured. [Citations.] In this 'usual tripartite relationship existing between insurer, insured and counsel, there is a single, common interest shared among them. Dual representation by counsel is beneficial since the shared goal of minimizing or eliminating liability to a third party is the same.' " (*Long v. Century Indem. Co*. (2008) 163 Cal.App.4th 1460, 1468.)

"In the landmark *Cumis* opinion, the court held that if a conflict of interest exists between an insurer and its insured, based on possible noncoverage under the insurance policy, the insured is entitled to retain its own independent counsel at the insurer's expense. [Citation.] [¶] The *Cumis* opinion was codified in 1987 by the enactment of Civil Code section 2860, which ' "clarifies and limits" ' the rights and responsibilities of insurer and insured as set forth in *Cumis*." (*James 3 Corp. v. Truck Ins. Exchange* (2001) 91 Cal.App.4th 1093, 1100, fn. omitted (*James 3*).)

Civil Code section 2860 provides, in relevant part:

"(a) If the provisions of a policy of insurance impose a duty to defend upon an insurer and a conflict of interest arises which creates a duty on the part of the insurer to provide independent counsel to the insured, the insurer shall provide independent counsel to represent the insured unless, at the time the insured is informed that a possible conflict may arise or does exist, the insured expressly waives, in writing, the right to independent counsel. . . .

5

"(b) For purposes of this section, a conflict of interest does not exist as to allegations or facts in the litigation for which the insurer denies coverage; however, when an insurer reserves its rights on a given issue and the outcome of that coverage issue can be controlled by counsel first retained by the insurer for the defense of the claim, a conflict of interest may exist."

The duty to provide independent counsel " 'is not based on insurance law but on the ethical duty of an attorney to avoid representing conflicting interests.' " (*James 3, supra*, 91 Cal.App.4th at p. 1101.) " 'As statutory and case law make clear, not every conflict of interest triggers an obligation on the part of the insurer to provide the insured with independent counsel at the insurer's expense.' " (*Ibid*.) "A mere possibility of an unspecified conflict does not require independent counsel. The conflict must be significant, not merely theoretical, actual, not merely potential." (*Dynamic Concepts, Inc. v. Truck Ins. Exchange* (1998) 61 Cal.App.4th 999, 1007.)

"Some of the circumstances that may create a conflict of interest requiring the insurer to provide independent counsel include: (1) where the insurer reserves its rights on a given issue *and* the outcome of that coverage issue can be controlled by the insurer's retained counsel [citations]; (2) where the insurer insures both the plaintiff and the defendant [citation]; (3) where the insurer has filed suit against the insured, whether or not the suit is related to the lawsuit the insurer is obligated to defend [citation]; (4) where the insurer pursues settlement in excess of policy limits without the insured's consent and leaving the insured exposed to claims by third parties [citation]; and (5) any other situation where an attorney who represents the interests of both the insurer and the insured finds that his or her 'representation of the one is rendered less effective by reason of his [or her] representation of the other.' " (*James 3, supra*, 91 Cal.App.4th at p. 1101.) Here, Nationwide has agreed to defend without any reservation of rights and none of the first four circumstances apply. There remains the catch-all principle that a "[c]onflict of interest between jointly represented clients occurs whenever their common lawyer's

6

representation of the one is rendered less effective by reason of his representation of the other." (*Spindle v. Chubb/Pacific Indemnity Group* (1979) 89 Cal.App.3d 706, 713.) However, Simonyan's claim that there is a conflict of interest does not rely on the catch-all standard either.

Simonyan argues a conflict of interest exists because there is a "significant risk" Porter Scott's representation of his interests will be "materially limited." This proposed standard is derived from rule 1.7(b) of the Rules of Professional Conduct, which provides, in relevant part: "A lawyer shall not . . . represent a client *if there is a significant risk the lawyer's representation of the client will be materially limited* by the lawyer's responsibilities to or relationships with another client, a former client or a third person, or by the lawyer's own interests." (Italics added.) Even if we assume the right to independent counsel attaches at this point, the standard is unhelpful to Simonyan because his allegations do not meet it. One of the comments to the rule explains this paragraph applies where "there is a significant risk that a lawyer's ability to consider, recommend or carry out an appropriate course of action for the client will be materially limited as a result of the lawyer's other responsibilities, interests, or relationships, whether legal, business, financial, professional, or personal." (Com. 4 to Rules Prof. Conduct, rule 1.7(b).) "The mere possibility of subsequent harm" is insufficient. (*Ibid*.) "The critical questions are the likelihood that a difference in interests exists or will eventuate and, if it does, whether it will materially interfere with the lawyer's independent professional judgment in considering alternatives or foreclose courses of action that reasonably should be pursued on behalf of each client." (*Ibid*.) Simonyan has not alleged facts sufficient to show such a likelihood.

Simonyan argues there is a conflict of interest because "[h]e thought the driver who rear-ended him was at fault for the collision and filed an action against the driver, whereas Nationwide determined Simonyan was at fault." Simonyan alleges Nationwide raised his premiums and removed his driving discounts based on this determination. He

7

cites no authority that concludes that when an insurance company raises premiums based on its belief of fault, it now has a conflict of interest. Regardless of Nationwide's belief of Simonyan's fault, it is required by the insurance policy to pay for his defense and any damages. Simonyan acknowledges Nationwide did not reserve its rights and agreed to defend the claim fully. Thus, Nationwide's interest in the litigation is to defeat liability and minimize any damages. (See *James 3, supra*, 91 Cal.App.4th at p. 1103 [explaining that the interests of the insured and insurer did not conflict vis-à-vis the defense of causes of actions the insurer had agreed to defend without a reservation of rights]; cf. *Nede Mgmt., Inc. v. Aspen American Insurance Company* (2021) 68 Cal.App.5th 1121, 1135 [explaining that belief of managing underwriter and insurer-appointed counsel that insureds would be bad witnesses "is not a conflict of interest. If [insurer-appointed counsel] had entertained such a view, it is part of an attorney's honest assessment about the merits of a case"].) The suggestion that Porter Scott would work against Simonyan's interest in the litigation because Nationwide has raised Simonyan's premiums based on its assessment of fault is no more than a mere possibility. Simonyan argues his contractual duty to cooperate "crystalizes" the conflict. He posits a scenario where a lawyer appointed by Nationwide "will prepare him to testify one way based on Nationwide's belief that he was at fault," and he must "choose to cooperate with Nationwide's position that he is at fault, or he can choose to speak the truth and lose his defense counsel." Alleging "anticipated circumstances" that "have not occurred yet in the underlying litigation" is insufficient to state a claim that independent counsel is required. (*Centex Homes v. St. Paul Fire & Marine Ins. Co.* (2015) 237 Cal.App.4th 23, 31.) Simonyan has failed to establish any error with respect to the trial court's sustaining of the demurrer as to his breach of contract claim.

C.       *Breach of Implied Covenant of Good Faith and Fair Dealing*

Our Supreme Court has explained " '[there] is an implied covenant of good faith and fair dealing in every contract [including insurance policies] that neither party will do

8

anything which will injure the right of the other to receive the benefits of the agreement.' " (*Gruenberg v. Aetna Ins. Co.* (1973) 9 Cal.3d 566, 573.) "The precise nature and extent of the duty imposed by such an implied promise will depend on the contractual purposes." (*Egan v. Mutual of Omaha Ins. Co.* (1979) 24 Cal.3d 809, 818.)

Simonyan argues he sufficiently alleged a claim for breach of the implied covenant of good faith and fair dealing based on Nationwide's selection of Porter Scott instead of the counsel he had already retained. He relies primarily on *Barney v. Aetna Casualty & Surety Co.* (1986) 185 Cal.App.3d 966 (*Barney*). We find this case unhelpful to his position.

In *Barney*, the insured was injured in an automobile accident and retained her own attorney to represent her in her personal injury claim against the driver of the other vehicle. (*Barney, supra*, 185 Cal.App.3d at p. 970.) Meanwhile, the other driver filed a personal and property damage action against the insured. (*Ibid*.) As the appellate court explained, the insurer met its obligation under the contract to defend and indemnify the insured by hiring counsel on her behalf and settling the claim within policy limits. (*Id*. at p. 975.) The insurer had no duty to file a cross-complaint because "nothing in the policy provisions imposes upon the insurer the duty to prosecute claims of the insured against third parties." (*Ibid*.) However, the insured alleged that the insurer was aware of her "substantial counterclaim" against the driver and effectuated a settlement agreement without her knowledge that operated to bar that counterclaim. (*Id*. at p. 976.) The court held this was sufficient to allege a cause of action for breach of the implied covenant of good faith and fair dealing. (*Id*. at p. 973.) The insurer had argued that "the insured's right to prosecute a claim against third parties is not a right under the policy and therefore the covenant of good faith and fair dealing does not come into play." (*Id*. at p. 977.) The court disagreed: "Defendant's interpretation of what constitutes a right under the policy is too narrow when viewed in light of the reasonable expectations of the insured. . . . An insured reasonably expects that the insurer, in using the authority granted under the

9

policy, will not knowingly effect a settlement which works to the detriment of the insured. The insured can hardly be said to have received any benefit from the policy of insurance if that benefit is totally voided by a countervailing detriment imposed upon him by the insurer without his consent." (*Ibid*.) The court held the insurer "had a duty not to knowingly use its discretionary power under the policy to effect a settlement in a manner injurious of [the insured]'s rights." (*Id*. at p. 978.) Simonyan's allegations do not implicate Nationwide's power to effect a settlement. They implicate Nationwide's right to control the defense it must provide under the contract. (See *James 3, supra*, 91 Cal.App.4th at p. 1106.) Regardless, Simonyan's allegations fail to state a claim for breach of the implied covenant of good faith and fair dealing.

The potential harms Simonyan identifies are not protected by the implied covenant of good faith and fair dealing in his insurance policy. Simonyan argues Nationwide breached this implied covenant in part by reminding him of his duty to cooperate under the terms of the policy. Further, he argues having two law firms represent him would increase litigation fees and costs. He asserts that two law firms "would needlessly complicate the discovery process and trial presentation" and "create problems because the trial court would likely not allow two attorneys who both represent Simonyan to conduct voir dire, cross-examine a single witness, and deliver an opening statement and a closing argument." "[A] liability insurance policy's purpose is to provide the insured with a defense and indemnification for third party claims within the scope of the coverage purchased, and not to insure the entire range of the insured's well-being." (*Western Polymer Technology, Inc. v. Reliance Ins. Co.* (1995) 32 Cal.App.4th 14, 27 [alleged injury to business reputation insufficient].) What Simonyan describes is the reality of the parties' rights under the policy—Nationwide has a duty to defend and in the absence of a conflict it has a right to control the defense litigation and ask for cooperation. (See, e.g., *Swanson v. State Farm General Ins. Co.* (2013) 219 Cal.App.4th 1153, 1160 [insured had "right to take control of the litigation with an attorney of its choosing and to cease paying

10

. . . *Cumis* counsel chosen by [the insured], after [insurer] withdrew its *Cumis*-triggering reservation of rights"].)  It would not be reasonable for Simonyan to expect otherwise based on their agreement.  As the trial court noted, Civil Code section 2860, subdivision (f) provides:  "Where the insured selects independent counsel pursuant to the provisions of this section, both the counsel provided by the insurer and independent counsel selected by the insured shall be allowed to participate in all aspects of the litigation.  Counsel shall cooperate fully in the exchange of information that is consistent with each counsel's ethical and legal obligation to the insured.  Nothing in this section shall relieve the insured of his or her duty to cooperate with the insurer under the terms of the insurance contract."  Thus, even when *Cumis* counsel is provided, these issues may still exist. Simonyan argues that "it seems probable that Nationwide thinks that by insisting Simonyan has a 'duty to cooperate,' it could later force him to compromise his collateral rights or lose his defense under the policy on the ground that he failed to 'cooperate.' " The main authority on which Simonyan relies is perhaps the best illustration of the counterpoint.  The insurer in *Barney* breached the implied covenant of good faith and fair dealing by directing that counsel enter into a settlement agreement that allegedly caused the insured to lose her claim for personal injuries.  Moreover, given *Barney*'s holding that an insurance company has "a duty not to knowingly use its discretionary power under the policy to effect a settlement in a manner injurious of [the insured]'s rights," we do not see how we can infer a probability that such a breach would occur.  (*Barney, supra*, 185 Cal.App.3d at p. 978.)  The trial court did not err in granting the demurrer as to Simonyan's claim for breach of the implied covenant of good faith and fair dealing.

D.      *Motion for Reconsideration and Leave to Amend*

Simonyan filed a motion for reconsideration pursuant to Code of Civil Procedure section 1008.  The statute provides that, within 10 days after service of notice of entry of an order, a party may make a motion to reconsider "based upon new or different facts, circumstances, or law."  (Code Civ. Proc., § 1008, subd. (a).)  Simonyan's motion

11

asserted that, after the trial court sustained Nationwide's demurrer without leave to amend, he determined he could not afford to pay Gavrilov & Brooks and decided that he did not want two law firms to represent him in the same action. Simonyan sent a substitution of attorney to Porter Scott for signature, and Porter Scott did not sign. An attorney with Porter Scott explained, "I am not interested in taking Mr. Simonyan's plaintiff personal injury case and I will not be signing the substitution of attorney." Simonyan argued this refusal established a conflict of interest and he should be permitted to amend his complaint on that basis "because Porter Scott is not adhering to its ethical duties to him." The trial court denied the motion for reconsideration. On appeal, Simonyan argues the trial court abused its discretion in denying leave to amend based on Porter Scott's refusal to sign the substitution of attorney. We disagree.

The court explained that it "finds that Porter[] Scott's 'refusal' to represent plaintiff in his capacity as a personal injury claimant creates no conflict of interest which justifies the reconsideration of the . . . order sustaining the demurrer to the [second amended complaint] <u>without</u> leave to amend. In short, neither defendant Nationwide nor Porter[] Scott is under any obligation to represent plaintiff in connection with his own affirmative personal injury claims given that the subject insurance policy is by its own terms otherwise limited to providing plaintiff with a defense when a covered claim is made <u>against</u> him. [¶] Nothing in California Rules of Professional Conduct, Rule 1.7 . . . changes this since plaintiff has failed to show the existence of any 'significant risk' that Porter[] Scott's representation of plaintiff <u>in his capacity as a defendant</u> in the underlying action <u>as expressly provided for in the subject insurance policy</u> 'will be materially limited by the lawyer's responsibilities to or relationships with another client, a former client, or a third person, or by the lawyer's own interests.' " We agree with the trial court's analysis. Simonyan has failed to establish the court abused its discretion in denying his motion for reconsideration or in denying him leave to amend his complaint.

## III.  DISPOSITION

The judgment is affirmed.  Nationwide shall recover its costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1) & (2).)

/S/
_____
RENNER, J.

We concur:

/S/
_____
BLEASE, Acting P. J.

/S/
_____
MAURO, J.

13

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| NSHAN SIMONYAN, | C091100 |
| Plaintiff and Appellant, | (Super. Ct. No. 34201800240790CUBCGDS) |
| v. | |
| NATIONWIDE INSURANCE COMPANY OF AMERICA, | ORDER CERTIFYING OPINION FOR PUBLICATION |
| Defendant and Respondent. | [NO CHANGE IN JUDGMENT] |

APPEAL from a judgment of the Superior Court of Sacramento County, Christopher E. Krueger, Judge. Affirmed.

Gavrilov & Brooks, Sheila Wirkus Pendergast, and Ognian A. Gavrilov, for Plaintiff and Appellant.

Dentons US, Sonia R. Martin, Emily S. Nozick, and David R. Simonton for Defendant and Respondent.

THE COURT:

The opinion in the above-entitled matter filed April 19, 2022, was not certified for publication in the Official Reports. For good cause it appears now that the opinion

1

should be published in the Official Reports, and it is so ordered.  There is no change in judgment.


/S/

_____

BLEASE, Acting P. J.


/S/

_____

MAURO, J.


/S/

_____

RENNER, J.

2