**John E. GARDNER, Jr.,**
**Plaintiff–Appellant,**

**v.**

**AETNA CASUALTY & SURETY COMPANY, Defendant–Appellee.**

No. 87–2593.

United States Court of Appeals,
Fourth Circuit.

Argued Jan. 4, 1988.

Decided March 4, 1988.

Anthony Franklin Anderson, Roanoke, Va., for plaintiff-appellant.

Edward Hutton Starr (Mays & Valentine, Richmond, Va., on brief), for defendant-appellee.

Before WIDENER and HALL, Circuit Judges, and BULLOCK, United States District Judge for the Middle District of North Carolina, sitting by designation.

K.K. HALL, Circuit Judge:

John E. Gardner, an oral surgeon who formerly practiced in the Roanoke, Virginia, area, appeals an order of the district court granting summary judgment in favor of the provider of his medical malpractice insurance, Aetna Casualty & Surety Company ("Aetna"). In a civil action brought pursuant to diversity jurisdiction, Gardner alleged that Aetna breached an implied covenant of good faith by settling a malpractice claim against him without his consent. We affirm the dismissal of Gardner's complaint although for reasons somewhat different from those advanced by the district court.

I.

On June 12, 1980, Gardner performed oral surgery on Gary West at the Roanoke Virginia Community Hospital. West had been injured when an exploding tire rim struck him in the jaw. During the operation, the anesthesiologist, Dr. Luis Araneda, informed Gardner that West's heart had stopped. Although the surgical team was able to revive him, West sustained permanent brain damage as a result of oxygen deprivation during surgery. The damage left West almost completely paralyzed and unable to speak.

On November 17, 1980, Gary West's wife, Martha, acting as committee on his behalf, notified Gardner that she intended to hold him responsible for the injuries to her husband. Gardner then informed Aetna of the potential claim against him.

Aetna accepted the responsibility for defending West based upon its obligations

under two professional liability policies previously issued for the period July 21, 1979, to July 21, 1980. The policies provided that Aetna would pay on behalf of the insured all sums which the insured was legally obligated to pay as damages.[1] Of particular significance to this appeal, the policies also provided in what has been described as a "deems expedient" provision that:

> The Company shall have the right and duty to defend any suit against the insured seeking damages because of such injury even if any of the allegations of the suit are groundless, false or fraudulent. *The Company may make such investigation and settlement of any claim or suit as it deems expedient.*

In February of 1981, Gardner was arrested and charged with conspiracy to murder his business partner. The charge was subsequently reduced pursuant to a plea agreement to the lesser offense of solicitation of a felony and Gardner was placed on probation on January 25, 1983. It appears, however, that substantial unfavorable publicity surrounded Gardner during the same period that the West malpractice case was taking shape.

In March of 1981, Martha West filed a civil action in the Circuit Court for the City of Roanoke alleging medical malpractice by Gardner, Araneda, and the Roanoke Community Hospital. The complaint contended that Gardner had failed to monitor and supervise the work of Araneda. Damages were sought in the amount of 7.5 million dollars. Aetna immediately employed an attorney, W.H. Jolly, to represent Gardner. It is undisputed that Gardner informed Jolly that he had not been negligent and that he wished to participate in an active defense.

As the case advanced through pretrial proceedings, Jolly was informed early in 1983 that West's committee was willing to settle the case for $300,000. Believing the

figure to be reasonable, Jolly recommended that Aetna offer a settlement in that amount. The offer was, in fact, presented and accepted by West's committee on March 9, 1983. The settlement was formally embodied in an order entered by the court on March 16, 1983.

Although Aetna has suggested in this appeal that Jolly "recommended" to Gardner that he accept the settlement, it appears to have been presented to him largely as a fait accompli.[2] It is clear that Gardner did make some effort to express his displeasure. In a letter to Jolly dated March 9, 1983, Gardner stated that the settlement was without his consent. A formal "Objection to Settlement" was filed with the court on March 21, 1983. The "Objection" did not, however, request that the court withdraw or modify in any fashion its March 16 order dismissing the action pursuant to settlement.

After court approval of the settlement was provided, Aetna paid $300,000 to the plaintiff. The settlement was funded partially by Gardner's primary malpractice policy and partially from his excess indemnity policy. The full payment was well within the policy limits. Gardner was not required, therefore, to provide any funds toward the settlement or toward attorney fees.

On March 14, 1986, Gardner filed the instant action in district court alleging that the West settlement reached over his objection constituted bad faith and contractual interference by Aetna.[3] The district court concluded, however, that the "deems expedient" language in Aetna's policy gave the company the absolute right to settle any claim within the policy limits. The court further concluded that it was of no legal consequence that Aetna exercised its absolute right to settle through an attorney who was hired initially to represent Gard-

---

1. The obligation to pay damages was subject to the policy limits of $200,000 on the basic policy and $1,000,000 on an excess coverage policy.

2. The letter supposedly recommending that Gardner accept the settlement as "in his best interest" was dated March 10, 1983. The offer

had by that time already been accepted by the counsel for West's committee.

3. Gardner complained that the settlement damaged his reputation and restricted his ability to obtain additional malpractice insurance in the future.

ner. The court, therefore, granted summary judgment in favor of Aetna and dismissed the action. This appeal followed.

## II.

Gardner contends on appeal that an insurance policy creates a "quasi-fiduciary" relationship between the insurance company and its policyholder—a relationship recognized by the Virginia Supreme Court in *Aetna Casualty & Surety Co. v. Price*, 206 Va. 749, 760–61, 146 S.E.2d 220, 227–28 (1966), when it required an insurer "to deal fairly with the insured in the handling and disposition of *any* claim...." (emphasis added). Appellant argues that Aetna's actions in this case including its failure to seek a prelitigation malpractice review panel,[4] failure to investigate the West claim adequately, failure to keep appellant informed of the progress of the case, and failure to allow him the option of assuming responsibility for the litigation before settlement all raise a material question of whether Aetna breached its "quasi-fiduciary" duty. Finally, appellant contends that he established at least a prima facie case of contractual interference by Aetna with his relationship with attorney Jolly thereby rendering summary judgment inappropriate. Although appellant's argument is not without some appeal, we find it ultimately unpersuasive.

■ Regardless of whether appellant's characterization of the duty as "quasi-fiduciary" is accepted, it is clear that in weighing possible settlement offers an insurance company does bear a responsibility of dealing with its insured fairly and in good faith. 44 Am.Jur.2d, Insurance § 1399. Although widespread use of "deems expedient" provisions of the type used in this case has conferred broad authority upon insurance companies with regard to such settlements, that authority is not absolute. In cases far too numerous to be cited here, insurance companies have been held responsible for a failure to settle a claim followed by an adjudication of liability beyond the policy limits. When a company has elected to settle within the policy limits, judicial deference to that decision has admittedly been substantial.[5] In at least one jurisdiction, however, it was recently held that a bad faith claim could be asserted against an insurance company notwithstanding a "deems expedient" provision and a settlement within the policy limits. *Barney v. Aetna Casualty & Surety Co.*, 230 Cal.Rptr. 215, 185 Cal.App.3d 966 (1986).

Logically, the range of a company's good faith discretion would be broader when deciding to settle a claim within policy limits than when electing to refuse a settlement and proceed to trial. We are not convinced, however, that the responsibility to exercise good faith simply evaporates in all cases if the eventual settlement leaves the insured without an immediate financial obligation. Under the proper circumstances, an involuntary settlement could still inflict harm of other types upon the policyholder.[6] Certainly the courts of Virginia have not conclusively held that a settlement of the type at issue here is absolutely immune to attack as a product of bad faith. We, there-

---

4. Virginia Code § 8.01–581.2 provides for such prelitigation review as follows:

  A. No action may be brought for malpractice against a health care provider unless the claimant notifies the health care provider in writing by registered or certified mail prior to commencing the action. The written notification shall include the time of the alleged malpractice and a reasonable description of the act or acts of malpractice. The claimant or health care provider may within sixty days of such notification file a written request for a review by a medical malpractice review panel established as provided in § 8.01–58.1.3. The request for review shall be mailed to the Chief Justice of the Supreme Court of Virginia. Upon receipt of such request, the Chief Justice shall designate one sitting or one retired circuit court judge to act as chairman of the panel and shall select the other panel members as provided in § 8.01–581.3:1. No actions based on alleged malpractice shall be brought within ninety days of the notification by the claimant to the health care provider and if a panel is requested within the period of review by the medical review panel.

5. *See e.g. Marginian v. Allstate Insurance Co.*, 18 Ohio St.2d 345, 481 N.E.2d 600 (1985).

6. In *Barney*, the settlement deprived the insured of an opportunity to assert a counterclaim against the plaintiff.

fore, conclude that the district court, sitting in diversity, was unnecessarily broad in its statement of reasoning supporting the grant of summary judgment. Properly viewed the issue is not whether Aetna exercised unfettered discretion based on the "deems expedient" provision in its policy but whether there was any material question of bad faith presented by Aetna's activity. Although we do not applaud all of the company's actions, we are fully satisfied that under the facts of this case the decision to settle the West claim was unquestionably a product of reasoned good faith on behalf of Aetna.

■ Our examination of the record discloses ample justification for Aetna's decision to avoid a trial in this matter. Gary West was a young man who had suffered horrible and permanent injury. The potential for a significant award of damages was readily apparent. Moreover, attorney Jolly learned that West had located an expert witness prepared to testify that Gardner, the supervising physician, had breached the applicable standard of care by failing to note that West's blood had lost oxygen during the operation. Finally, the stress and unfavorable publicity attendant to Gardner's criminal difficulties raised serious doubt about his ability to function effectively as a witness in his own civil case.

Assuming they are true, none of the omissions which appellant charges against Aetna present a material question of bad faith. Appellant has offered no explanation how any additional investigation by Aetna would have prevented West's claim from reaching the jury, thereby threatening a huge damage award. Aetna's failure to inform appellant of the progress of the case, although unfortunate, does not undermine or even relate to the validity of the decision to settle. Finally, like the district court, we see no basis for appellant's claim that Aetna was required to give him an opportunity to assume control of the litigation before settling it over his objection. The provision of the policy cited by appel-

lant simply does not address that eventuality.[7]

■ We are somewhat dismayed that Aetna took no steps to urge Gardner to seek the review panel available under Va. Code § 8.01–581.2. This unique pre-litigation procedure gives a Virginia health care provider an opportunity to develop the medical record in a non-adversarial fashion. Certainly, a favorable panel report, if it had been forthcoming, would have provided some solace to Gardner after the settlement by supporting his professional reputation. We, of course, have no way of ascertaining whether a panel review would have vindicated Gardner.

It is true, as Aetna asserted in certain communications with Gardner below, the statutory right to request a review panel resides with the health care provider and not the insurer. A prudent insurance company, however, would almost certainly advise its policyholder to obtain review as a precaution against frivolous claims. Nevertheless, Aetna's failure to take that step cannot benefit appellant in this case. There is nothing in the record to suggest that Gardner was personally unaware of the available panel review, nor is there any support for a contention advanced on appeal that Aetna somehow "prevented" him from requesting that review. We may well question Aetna's business judgment but appellant's failure to exercise his independent statutory right precludes any claim of actionable bad faith on this issue.

### III.

■ Appellant's contention that Aetna improperly interfered with his contractual relationship with attorney Jolly requires little discussion. Even assuming that Jolly, who was retained and paid solely by Aetna, had a contractual relationship with Gardner stemming from the attorney-client relationship, it is clear that Jolly also had responsibilities to Aetna. Like the district court,

7. Gardner relies upon policy language which provides that: "The insured shall not, except at his own cost, voluntarily make any payment, assume any obligation or incur any expense ..." On its face the provision does nothing more than protect the company from unilateral expenditure by its insured. No additional policyholder rights are thereby created.

we can see no improper contractual interference simply because Aetna ordered Jolly to take an action that was within the scope of Aetna's contractual rights. Appellant's assertion of contractual interference is but a thinly-disguised effort to resurrect his bad faith claim in another context. We reject that effort.

IV.

For the foregoing reasons, the judgment of the district court granting Aetna's motion for summary judgment is affirmed.

AFFIRMED.

WIDENER, Circuit Judge, concurring:

I concur in the result.