570 So.2d 1362 (1990)
Marvin M. SHUSTER, M.D., and Marvin M. Shuster, M.D., P.A., Appellants,
v.
SOUTH BROWARD HOSPITAL DISTRICT PHYSICIANS' PROFESSIONAL LIABILITY INSURANCE TRUST, a Florida Self-Insurance Trust, Appellee.
No. 89-1422.
District Court of Appeal of Florida, Fourth District.
December 5, 1990.
*1363 Charles C. Powers of Powers and Koons, West Palm Beach, for appellants.
Jay Cohen and Scott J. Frank of Atkinson, Jenne, Diner, Stone & Cohen, P.A., Hollywood, for appellee.
WARNER, Judge.
This case presents an issue of first impression in Florida: whether an insured can maintain a common law action for bad faith against his insurer where the insurer has settled a cause of action against the insured within the policy limits of the insurance contract, exposing the insured to no excess liability. We hold that such a complaint fails to state a cause of action and affirm.
Appellants, a physician and his professional corporation, were insured by appellee, an insurance carrier, against liability for medical malpractice. Appellants' complaint alleged that appellee had breached its obligations to appellants by settling three malpractice suits without fully investigating the claims.[1] Specifically, appellants alleged that appellee: a) failed to investigate the facts of the case; b) failed to determine the basis of the plaintiffs' claims; c) failed to obtain independent expert evaluation of the claims to determine the merits; d) ignored appellants' request to deny liability and defend the suits; and e) settled the suits for sums substantially in excess of reasonable settlement values. Appellants alleged that appellee was acting in bad faith in the above actions. The complaint alleged that as a direct result of the insurer's bad faith settlements, the insured was no longer able to obtain malpractice insurance leading to a loss of income because of his inability to perform certain procedures for which insurance was required. Appellant Shuster also claimed damages to his reputation and for emotional distress. Defendant moved to dismiss the complaint for failure to state a cause of action. The trial court granted the motion and entered final judgment in favor of appellee. From this final order, this appeal has been lodged.
Appellants argue on appeal for an extension of Boston Old Colony Ins. Co. v. Gutierrez, 386 So.2d 783 (Fla. 1980) which *1364 held that an insurer has an obligation of good faith to its insured in the handling of the defense of claims against its insured and may be liable for an excess judgment against its insured where it fails to act in good faith. Specifically, it is appellants' contention that when the insurance company breaches the duty of good faith it is liable for any reasonably ascertainable damages even where the insurer settled the case within the policy limits. Appellee contends that both the contract provisions and the law are against such an expansion of liability of the insurer.
The policy in question provides:
The company shall have the right and duty to defend any suit against the named insured seeking such damages, even if any of the allegations of the suit are groundless, false or fraudulent. The company may make such investigation and such settlement of any claim or suit as it deems expedient. The company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the company's liability has been exhausted by payment of judgments or settlements (emphasis supplied).
Such clauses are common in insurance contracts and have been construed by the courts to provide a broad duty to defend, see Baron Oil Co. v. Nationwide Mut. Fire. Ins., 470 So.2d 810 (Fla. 1st DCA 1985), and a discretionary duty to settle. In Boston Old Colony, the supreme court set the standard that an insurer must exercise toward its insured in settling a case.
An insurer, in handling the defense of claims against its insured, has a duty to use the same degree of care and diligence as a person of ordinary care and prudence should exercise in the management of his own business. Auto Mutual Indemnity Co. v. Shaw, 134 Fla. 815, 184 So. 852 (1938). For when the insured has surrendered to the insurer all control over the handling of the claim, including all decisions with regard to litigation and settlement, then the insurer must assume a duty to exercise such control and make such decisions in good faith and with due regard for the interests of the insured. Liberty Mutual Ins. Co. v. Davis, 412 F.2d 475 (5th Cir.1969). This good faith duty obligates the insurer to advise the insured of settlement opportunities, to advise as to the probable outcome of the litigation, to warn of the possibility of an excess judgment, and to advise the insured of any steps he might take to avoid same. Ging v. American Liberty Ins. Co., 423 F.2d 115 (5th Cir.1970). The insurer must investigate the facts, give fair consideration to a settlement offer that is not unreasonable under the facts, and settle, if possible, where the reasonably prudent person, faced with the prospect of paying the total recovery, would do so. Government Employees Ins. Co. v. Grounds, 311 So.2d 164 (Fla. 1st DCA 1975), cert. discharged, 332 So.2d 13 (Fla. 1976); Government Employees Ins. Co. v. Campbell, 288 So.2d 513 (Fla. 1st DCA 1973), quashed, 306 So.2d 525 (Fla. 1974); Baxter v. Royal Indemnity Co., 285 So.2d 652 (Fla. 1st DCA 1973), cert. discharged, 317 So.2d 725 (Fla. 1975).
However, in Boston Old Colony, as in all the other Florida cases we could locate, the issue of the insurer's bad faith was presented in cases where the insurer failed or refused to settle within the policy limits resulting in an excess judgment against the insured. In Fidelity and Cas. Co. of New York v. Cope, 462 So.2d 459 (Fla. 1985) the Supreme Court quoted with approval from Kelly v. Williams, 411 So.2d 902 (Fla. 5th DCA), rev. denied, 419 So.2d 1198 (Fla. 1982).
The essence of a "bad faith" insurance suit (whether it is brought by the insured or by the injured party standing in his place), is that the insurer breached its duty to its insured by failing to properly or promptly defend the claim (which may encompass its failure to make a good faith offer of settlement within the policy limits)  all of which results in the insured *1365 being exposed to an excess judgment.
Fidelity at 460. The opinion went on to reiterate this point, stating "The basis for an action remained the damages of an insured from the bad faith action of the insurer which caused its insured to suffer a judgment for damages above his policy limits." Fidelity at 461. Fidelity was also an excess case. We must now consider whether the rule of Fidelity precludes the cause of action alleged by appellant.
Other jurisdictions are split on the recognition of bad faith action against an insurer who has settled within the policy limits but caused other damages to its insured. In A.W. Huss Co. v. Continental Cas. Co., 735 F.2d 246 (7th Cir.1984), the insured sued the insurer for exercising bad faith in settling a third party claim. It alleged that even though the insurer knew the case was one of clear liability it refused to settle until the eve of trial, causing the insured anxiety and concern and attorney's fees to monitor the case. Thus, although the case was settled within the policy limits, the insured sought these incidental damages. After reviewing Wisconsin case law, the federal appellate court held that a third party bad faith refusal to settle required as a necessary predicate the insured's liability for an excess judgment.
The Supreme Court of Ohio considered the question in Marginian v. Allstate Ins. Co., 18 Ohio St.3d 345, 481 N.E.2d 600 (1985) and held that under a policy provision similar to the one in this case:
where a contract of insurance provides that the insurer may, as it deems appropriate, settle any claim or action brought against its insured, a cause of action alleging a breach of the insured's duty of good faith will not lie where the insurer has settled such claim within the monetary limits of the insured's policy.
Marginian 481 N.E.2d at 603. The court's decision is grounded on principles of contract law that where the parties have expressly contracted with respect to the subject, namely the insurer's right to settle the case, the court could not rewrite the contract by allowing the insured a cause of action against the company when it exercised its right.
Relying in part on Marginian, the Illinois appellate court held in Casualty Ins. Co. v. Town & Country Pre-School Nursery, Inc., 147 Ill. App.3d 567, 101 Ill.Dec. 669, 498 N.E.2d 1177 (1 Dist., 1986), that where the terms of the insurance contract are clear and enforceable, the insurer had the right to settle within the policy limits, and its duty of good faith was not a material issue. The issue of an insurer's good faith is only relevant in cases involving claims beyond the policy limits, where the insured's interest with which the insurance company must be concerned is that which is contemplated by the contract of insurance, namely the avoidance of a money judgment against the insured.
A similar case to the instant case is found in Feliberty v. Damon, 72 N.Y.2d 112, 531 N.Y.S.2d 778, 527 N.E.2d 261 (Ct. of App. 1988), where a physician sued his carrier for bad faith in settling a malpractice case against him. The doctor alleged that the insurance company failed to properly investigate and represent him throughout the proceedings, resulting in a settlement without his knowledge which damaged his professional reputation. The doctor's policy had a clause which was nearly identical to the clause quoted from the policy in this case. The New York court held that where the contract gave the insurer unconditional right to settle without the insured's consent, there could be no action for bad faith in settling within the policy limits.
However, in Barney v. Aetna Cas. & Sur. Co., 185 Cal. App.3d 966, 230 Cal. Rptr. 215 (2d Dist., 1986), the plaintiff sued her insurance company for settling in bad faith even though the settlement was within the policy limits. She alleged that in settling the insurance company had entered into a dismissal with prejudice of a personal injury action against plaintiff and by doing so *1366 barred plaintiff's own counterclaim for personal injuries, even though it knew of her desire to pursue her own claim. The court concluded that under California law the emphasis of the analysis had been to look to the reasonable expectations of the insured, and the court "will look beyond the four corners of the policy to determine whether the insurer is liable for bad faith conduct. `In short the insurance company may not ignore the insured and then seek refuge in the fine print of the policy.'" Barney 230 Cal. Rptr. at 220, quoting from Terzian v. California Cas. Indem. Exchange, 42 Cal. App.3d 942, 950, 117 Cal. Rptr. 284 (1974). Again, the court reiterated:
An insured reasonably expects that the insurer, in using the authority granted under the policy, will not knowingly effect a settlement which works to the detriment of the insured. The insured can hardly be said to have received any benefit from the policy of insurance if that benefit is totally voided by a countervailing detriment imposed upon him by the insurer without his consent.
Barney 230 Cal. Rptr. at 221. Thus the California court held that an insurance company has a duty not to knowingly use its discretionary power to settle under the policy in a manner which is injurious to its insured's rights even when the settlement is within the policy limits.[2]
More recently in Gardner v. Aetna Cas. & Sur. Co., 841 F.2d 82 (4th Cir.1988), an oral surgeon brought suit against his malpractice insurer alleging that the insurance company settled a case against him in bad faith resulting in damage to his professional reputation and restricting his ability to obtain malpractice insurance. The court noted that in Virginia an insurer had the obligation "to deal fairly with the insured in the handling and disposition of any claim (emphasis supplied)." Gardner at 85, quoting Aetna Cas. & Sur. Co. v. Price, 206 Va. 749, 760-61, 146 S.E.2d 220, 227-228 (1966). Noting Barney, the court concluded that:
Logically, the range of a company's good faith discretion would be broader when deciding to settle a claim within policy limits than when electing to refuse a settlement and proceed to trial. We are not convinced, however, that the responsibility to exercise good faith simply evaporates in all cases if the eventual settlement leaves the insured without an immediate financial obligation. Under the proper circumstances, an involuntary settlement could still inflict harm of other types upon the policyholder (footnote omitted).
Gardner at 85. Thus, the court recognized the existence of a cause of action against an insurance company for bad faith in settling within the policy limits where such settlement causes material, expected injury to the insured.
And finally, in American Home Assur. Co., Inc. v. Hermann's Warehouse Corp., 117 N.J. 1, 563 A.2d 444 (1989), the New Jersey Supreme Court recognized that the insurer's obligation to act in good faith is not limited to cases in which the insurer's refusal to settle within the policy limits exposes the insured to an excess judgment. "The nature of the relationship is such as to require an insurer to exercise good faith in its dealing with the insured, particularly when the insured's money or other interests  for instance reputation  may be at risk." American Home, 563 A.2d at 447. However, the court held that the insurance company did not exercise bad faith in agreeing to a settlement which obligated the insured to pay the deductible amount because the insurer had the exclusive right to control settlement under the policy and that necessarily included a settlement involving the deductible.
The distinction to be drawn in the two lines of cases is that in the former group *1367 refusing to recognize the cause of action, the courts' decisions are grounded on principles of contract law holding that where the parties have unambiguously contracted to give the right to settle to the insurer, the insured does not breach its contract by exercising its right. On the other hand, the decisions in Barney and Gardner are founded on the courts' recognition of a quasi-fiduciary relationship between insurer and insured, and recovery in such cases are actions in tort. See Barney, citing Gruenberg v. Aetna Ins. Co., 9 Cal.3d 566, 108 Cal. Rptr. 480, 510 P.2d 1032 (1973).
The Florida Supreme Court has held that insurer bad faith actions sound in contract and not in tort. See Thompson v. Commercial Union Insurance Company of New York, 267 So.2d 18 (Fla. 1972). Furthermore, in Butchikas v. Travelers Indem. Co., 343 So.2d 816 (Fla. 1976), the Supreme Court held that punitive damages and damages for mental anguish, traditional damages in tort actions, were not available in actions where an insured failed to settle within the policy limits resulting in an excess judgment, absent a claim of active concealment or deliberate misrepresentation which would amount to an independent tort. The Butchikas court rejected the insured's suggestion that he should be entitled to punitive damages based on a theory of breach of fiduciary duty. See also Stetz v. American Cas. Co. of Reading, Pa., 368 So.2d 912 (Fla. 3d DCA 1979).
The fiduciary relation theory was expressed in Baxter v. Royal Indem. Co., 285 So.2d 652 (Fla. 1st DCA 1973), in a case regarding an insurer's failure to pay uninsured motorist coverage prior to an arbitration award in favor of the insured. In contrasting the duties of an insurer with respect to liability coverage and that of uninsured motorist coverage, the court stated:
The relationship between the parties arising from the bodily injury liability provisions of the policy is fiduciary in nature, much akin to that of attorney and client. Because of such relationship, the insurer owes a duty to the insured to exercise the utmost good faith and a reasonable discretion in evaluating the claim made against him and in negotiating for a settlement of that claim within the policy limits if such is possible. If the circumstances are such that a reasonable and prudent man with the obligation to pay all the recoverable damages would settle for an amount within the policy limits, it is the legal duty of the insurer to do so. Failure to effect such a settlement would unreasonably risk the danger of a judgment in excess of the policy limits for which the insured would be liable but for which the insurer would not. By taking such an unreasonable risk, the insurer would be gambling with the insured's money to the latter's prejudice.
Baxter at 655-656. However, with respect to its duties under the uninsured motorist coverage the court held that there was no fiduciary relationship because the interests of the insurer and insured are adverse in such claims.[3] Thus, the insurer's insistence on arbitration as provided in the policy was simply a reliance on its contract:
It is difficult to rationalize how either party could be charged with the commission of a tort merely because it elected to exercise a lawful option open to it under the contract. If a party to a contract exercises an option given to it by the clear and lawful terms thereof, it would appear immaterial whether such election was motivated by good faith, bad faith, self-interest, malice, spite, or indifference.

*1368 Baxter at 656 (emphasis supplied).[4]
Taking the Baxter decision as a whole, the fiduciary duty aspect of the insurer/insured relationship is determined by the scope of the contractual undertaking. Because the insured has conferred on the insurer by contract the complete obligation and authority to settle (and pay) claims in which the insured may be liable, it must exercise that authority so as to accomplish the very object of the delegation of the authority and to that end exercise good faith with due regard for the insured's interest to be free of monetary obligation as a result of the claim made. However, where the insurer acts within the authority and rights delegated to it in accomplishing the intended result under the contract, it cannot be liable to the insured for exercising its contractual rights.
In this case, the insurer's contractual rights give it the authority to settle a claim "as it deems expedient". Expedient is defined in Webster's New World Dictionary, College Edition as:
1. useful for effecting a desired result; suited to the circumstances or the occasion; advantageous; convenient. 2. based on or offering what is of use or advantage rather than what is right or just; guided by self interest; advisable politic (emphasis supplied).
Thus, the very language used alerts the insured that where the insurer is contemplating settlements within its limits of liability, it will be guided by its own self-interest. And, as Baxter notes, where a party to a contract is merely exercising its clear right under the contract, whether it acts in good faith or bad faith is irrelevant. See also Casualty Ins. Co. v. Town & Country Pre-school Nursery, Inc.
From these cases we conclude and hold that under common law principles where an insurance policy gives the insurer the right to make such settlement of a claim as it deems expedient and the insurer settles the claim within the policy limits of insurance so that the insured is not exposed to liability, there is no cause of action for bad faith in effecting the settlement. The insurer obligates itself to indemnify the insured for liability on claims, not damage to the insured's reputation as a result of the claim. It is the insurer's funds which are to be used for that purpose. Thus, its insistence on having the broad discretionary right to settle as it deems expedient is not only understandable but indeed is probably good business. An insurance company may not want to defend an insured's action based upon "principle", for instance, if it can use fewer dollars by settling. Furthermore, it is the public policy of this state to encourage settlement of litigation. Florida East Coast R. Co. v. Thompson, 93 Fla. 30, 111 So. 525 (1927). To adopt the position of appellant herein would be contrary to that policy and would discourage settlements by insurers for fear of being sued by their insureds. See American Home Assur. v. Hermann's Warehouse, 215 N.J. Super. 260, 521 A.2d 903 (1987), aff'd., 117 N.J. 1, 563 A.2d 444 (1989).
Finally, where the language of the contract is clear and unambiguous, the courts should give effect to its express written provisions. State Farm Fire and Cas. Co. v. Oliveras, 441 So.2d 175 (Fla. 4th DCA 1983). The policy provision here can be read no other way than to give the exclusive right to settle "as it deems expedient." From the definition heretofore cited, to adopt appellants' view we would have to rewrite the policy, something courts cannot do. See Pastori v. Commercial Union Ins. Co., 473 So.2d 40 (Fla. 3d DCA 1985); Gulf Ins. Corp. v. Continental Cas. Co., 464 So.2d 207 (Fla. 3d DCA 1985).
*1369 For all the foregoing reasons we affirm the final judgment of dismissal. However, we certify the following question to the Supreme Court as one of great public importance:
MAY AN INSURED MAINTAIN AN ACTION AGAINST HIS INSURER FOR BAD FAITH WHERE THE INSURER HAS SETTLED A CAUSE OF ACTION AGAINST THE INSURED WITHIN THE POLICY LIMITS OF THE INSURANCE CONTRACT WHICH PROVIDES THAT THE INSURER MAY SETTLE THE CLAIM AS IT DEEMS EXPEDIENT, AND THE INSURED IS NOT EXPOSED TO AN EXCESS JUDGMENT BUT IS CAUSED OTHER DAMAGES AS A RESULT OF THE SETTLEMENT?
DOWNEY and DELL, JJ., concur.
NOTES
[1] The settlements made by the insurer involved claims covered by a policy issued prior to October 1, 1985. Appellants cite the amendment to section 627.4147(1), Florida Statutes (1985) regarding medical malpractice policies, which requires the insurer to act in good faith and in the best interests of the insured in settlement within the policy limits. Appellants note the statute applies to policies issued after October 1, 1985, and states that it does not apply to this case for that reason. However, appellants contend that the statute merely codifies common law. We disagree as more particularly set forth in this opinion.

In addition appellants have not sued claiming a violation of section 624.155, Florida Statutes (1989) (civil remedies for certain insurance practices). And we note the recent amendment to that section to provide that the statutory action does not preempt common law remedies. See Chapter 90-119, Florida Statutes, effective October 1, 1990. We do not express an opinion as to whether a bad faith settlement within the policy limits is a violation of Florida Statutes 624.155.
[2] In Barney the allegations would also constitute an action on the independent tort of active misrepresentation or concealment.
[3] Under section 624.155, Florida Statutes (1989) some cases of refusal to pay such benefits may state a cause of action.
[4] See also Thomas v. Western World Ins. Co., 343 So.2d 1298 (Fla. 2d DCA 1977), which holds that an insurer's refusal to defend is actionable as a breach of contract, and bad faith is not a prerequisite to the maintenance of a cause of action for the breach.