651 So.2d 186 (1995)
DICKERSON FLORIDA, INC., Appellant,
v.
Gary McPEEK and Frank McPeek d/b/a McPeek Loader Service, Appellees.
No. 93-3819.
District Court of Appeal of Florida, Fourth District.
February 23, 1995.
Rehearing Denied March 28, 1995.
Eugene J. O'Neill, Gould, Cooksey, Fennell, Barkett, O'Neill & Marine, P.A., Vero Beach, for appellant.
J. Stephen Tierney, III, Neill, Griffin, Jeffries & Lloyd, Chartered, Fort Pierce, for appellees.
GUNTHER, Judge.
Appellant, Dickerson Florida, Inc., defendant below (Dickerson), appeals a final judgment awarding McPeek Loader Service (McPeek) damages in the amount of $16,504. We reverse.
Dickerson was awarded the general contract for the construction of an eighteen hole championship golf course at Ballantrae Golf and County Club. According to the general contract, Dickerson was to be paid for portions of the work on a unit price basis rather than a fixed lump sum. One of the unit price items was the clearing work for the golf course project. On this clearing work, the amount of money due Dickerson was based upon the owner's estimates of the number of acres totally or selectively cleared.
Dickerson elected to subcontract the land clearing work and therefore entered into a written subcontract with McPeek. McPeek was required to furnish Dickerson with periodic requests for payments which itemized the quantities of total acres cleared for each reporting period. These requests were then incorporated into Dickerson's requests for *187 payments which were submitted to the owner.
McPeek's first three pay requests were approved by the owners and McPeek was ultimately paid by Dickerson. Problems arose, however, between October 1991 and January 1992. Much of the clearing was accomplished during this time but no pay requests were submitted by McPeek. Ultimately, meetings were set for late January 1992 to discuss the problems arising at the site.
At these meetings, the parties discussed and agreed upon the acreage cleared as of that date. A letter confirming this acreage was sent from Dickerson to McPeek shortly following the meetings. Moreover, McPeek approved the agreed upon acreage in the subsequent pay request 4.1. Thereafter, pay request 4.1 was approved by the owner and McPeek was subsequently paid for the quantities of clearing contained in this pay request.
Following pay request 4.1, McPeek performed little, if any, additional work at the site. McPeek never submitted another pay request but instead instituted the instant action claiming damages in excess of $50,000. Dickerson denied liability and the case proceeded to a non-jury trial. Ultimately, the trial court awarded McPeek damages in the amount of $16,504.
It is axiomatic that where the language of a contract is clear and unambiguous, a trial court is not at liberty to modify the agreement and therefore must give effect to its express provisions. Voelker v. Combined Ins. Co. of America, 73 So.2d 403 (Fla. 1954); Shuster v. South Broward Hosp. Dist. Physicians; Prof. Liability Ins. Trust, 570 So.2d 1362 (Fla. 4th DCA 1990), approved, 591 So.2d 174 (Fla. 1992). Moreover, a trial court may not rewrite the terms of a contract in an effort to relieve one of the parties from the apparent hardship of an improvident bargain. Bella Vista v. Interior & Exterior Specialities Co., Inc., 436 So.2d 1107 (Fla. 4th DCA 1983). As such, it is not the role of a trial court to make an otherwise valid contract more reasonable from the standpoint of one of the contracting parties. Medical Center Health Plan v. Brick, 572 So.2d 548 (Fla. 1st DCA 1990).
In the instant case, the subcontract provides, in pertinent part:
Payment will be made to the SUBCONTRACTOR for work actually performed and completed, as measured and certified to by the principal's engineer at the unit prices hereinafter specified, which shall be accepted by the SUBCONTRACTOR as full compensation for furnishing all material and for doing all work contemplated and embraced in agreement ...
The estimates and calculations made by the principal or its engineers, as to the amount of work done by SUBCONTRACTOR shall be final and binding upon the parties hereto and shall conclusively establish the amount of work done by the SUBCONTRACTOR hereunder. It is understood and agreed that the SUBCONTRACTOR shall receive no compensation for any work done by him which is not approved and accepted by the principal and will make no claim against the contractor for any compensation based on any estimates or calculations other than those made by the principal, its engineers or other representatives...
Accordingly, the owner's engineers would approve or disapprove the acreage provided them in Dickerson's pay requests which were in turn based upon McPeek's pay requests. Moreover, according to the subcontract, McPeek's compensation was determined by the quantity of work approved and accepted by the owner's engineers. As such, pursuant to the subcontract, the first step towards compensation was for McPeek to submit pay requests.
Although evidence was presented, albeit contradicted, that McPeek cleared an enormous amount of acreage that they were never compensated for, the record reveals that McPeek never submitted a pay request reflecting this acreage. The subcontract specifically requires McPeek to submit pay requests and unequivocally states that no compensation is due McPeek until the owner's engineers approve and accept the requested acreage. Moreover, McPeek was fully compensated for the acreage they approved in *188 pay request 4.1 and performed no additional compensatory work after that date. Pursuant to the subcontract, then, McPeek was not entitled to any additional compensation.
Accordingly, the trial court erred in awarding McPeek damages in the amount of $16,504. Therefore, this case is reversed and remanded for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
WARNER and PARIENTE, JJ., concur.