DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**LATASHA FULTON ALLEN** and **TRAVIS ALLEN,** as parents and natural guardians of **T.A.**, a minor child; **LATASHA FULTON ALLEN,** as mother and natural guardian of **T.S.**, a minor child, and **LATASHA FULTON ALLEN,** as legal guardian of **S.K.**, a minor child,
Appellants,

v.

**OSCAR MONTALVAN, CLAUDIA DEBUSK** f/k/a **CLAUDIA MONTALVAN,** and **PROGRESSIVE INSURANCE COMPANY,**
Appellees.

No. 4D15-675

[June 22, 2016]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Dale Ross, Judge; L.T. Case No. 11-19315 (08).

Jay B. Green of Green Ackerman & Frost, P.A., Boca Raton, William B. King of Searcy Denney Scarola Barnhart & Shipley, P.A., and Philip M. Burlington and Nichole J. Segal of Burlington & Rockenbach, P.A., West Palm Beach; for appellants.

John H. Richards, Michele Ricca, and Yvette Lavelle of Boyd Richards Parker & Colonelli, P.L., Fort Lauderdale, for appellee Claudia Debusk f/k/a Claudia Montalvan.

John J. Wilke and Luis A. Botero of The Law Office of John J. Wilke, Boca Raton, for appellee Oscar Montalvan.

Thomas E. Scott and Scott A. Cole of Cole, Scott & Kissane, P.A., Miami, for appellee Progressive Insurance Company.

FORST, J.

Appellants Latasha Fulton Allen ("the mother") and Travis Allen ("the father"), on behalf of minors, T.A., T.S., and S.K (collectively "the children"), appeal the trial court's order enforcing a settlement agreement and dismissing their suit against appellees Oscar Montalvan and Claudia Debusk (Montalvan's former wife). Because we agree that the settlement

agreement was invalid as to the claims of the children, we reverse the trial court's order and remand for further proceedings.

## BACKGROUND

The children were three of six passengers in an automobile that was involved in an accident with the appellees. The driver of the automobile, the grandmother of two of the children and the mother of the third, was killed in the crash. The other passengers, including the mother and another minor, suffered varying degrees of injuries.

Within two days of the accident, the mother entered into an agreement with Miller & Jacobs, P.A., to represent herself and her family members, including the children, injured in the accident. As part of the representation agreement, the mother granted Miller & Jacobs the authority to "prosecute any suits or actions . . . and to settle, compromise, dismiss, or discontinue same."

Miller & Jacobs sent a letter to the appellees' insurance carrier, Progressive (also an appellee in this action), seeking coverage information. The appellees' coverage had limits of $25,000 per person and $50,000 per incident. A Progressive employee spoke with Jacobs to discuss possible claims against the appellees.

The details of the conversation between Progressive and Miller & Jacobs are disputed. The Progressive employee claims she told Jacobs that Progressive would be "globally tendering our policy limits to extinguish all bodily injury claims." She recounted that Jacobs requested the payment to be made as two checks, for $25,000 each, made payable to Miller & Jacobs's trust account. One check would be to settle the wrongful death claim of the grandmother's estate, while the remaining $25,000 was to settle the claims of the five surviving passengers. The Progressive employee stated that how Miller & Jacobs chose to divide the monies between these remaining claimants was left to the law firm's discretion. Progressive sent release forms to be signed by the mother on behalf of the grandmother's estate, herself, and the four minors. Because of the uncertainty of how the funds were going to be allocated, Progressive left the amounts in each release blank for the lawyers to fill in. The Progressive employee testified that she did not even contemplate that the money would be dispersed in such a manner that certain claimants would not receive any funds.

Jacobs's recollection of the conversation is different. He testified that Progressive's employee offered to tender the full policy limit. Jacobs and

2

the employee did not "go into specifics, as far as dollar amounts per claim. We didn't go into specifics about whose claims we were settling. She just said, I'm globally tendering the rest of the $25,000, and I'm going to send you blank releases. And I said okay." Jacobs recalled that he told the Progressive representative to make the checks payable to his firm's trust account. He did not recall if he spoke with the employee about the releases, as he sometimes settled cases without a release. He further stated that while he considered the $25,000 and release naming the deceased to be a settlement of the wrongful death claim, he did not consider the second $25,000 and releases for the other parties to be a settlement, but rather considered it an "insurance tender." Miller echoed this testimony, stating that he did not consider the tender to be a resolution of the claims, but was merely a tender of the policy limits.

Progressive sent Miller & Jacobs a letter to memorialize the aforementioned discussion. The letter stated:

> Based on the information we have obtained with regard to this loss we are globally tendering our insured's [sic] $50,000 bodily injury policy limits to settle the following claims: [listing all six of the parties' names, including the deceased driver]. This settlement is being made in exchange for a Full and Final Release of our insured's [sic], Claudia Montalvan and Oscar Montalvan."

Attached to the letter were two checks for $25,000 each, payable to the Miller & Jacobs Trust Account, as well as six releases, each naming one of the occupants of the car. The release form naming the deceased stated consideration in the amount of $25,000. The other five releases left the consideration amounts blank. Each release was entitled "Bodily Injury Release" and stated the signatory/party:

> hereby for myself, and for my heirs[,] executors, administrators, successors and assigns release and forever discharge Claudia Montalvan and Oscar Montalvan from any and all claims, actions, causes of action, demands, damages, costs, and any compensation whatsoever, including any claims for loss of consortium, which the undersigned now has/have or which may hereafter accrue on account of or in any way arising out of an accident which occurred on or about August 12, 2009, at or near Andrews Ave & N.E. 56 Street, Oakland Park, Broward County, Florida.

The checks were deposited into the law firm's trust account on August 26,

3

2009, and payments from those funds were made to the mother by sometime in 2011. The mother and father testified that these funds were used for household expenses, including furniture, clothes, and food for the children.

Roughly two years later, in August 2011, Miller & Jacobs sent the completed releases back to Progressive, with each release signed by the mother and a witness. Each release was accompanied by a letter, stating that it was a "release of all claims with regard to the settlement of the above-referenced claim." The blank consideration amounts were now filled in, with the mother's claim stating it was released for $25,000, while all the minors' claims showed consideration in the amount of $0. Everyone involved, including Miller, Jacobs, and the mother, claimed to have no knowledge as to who filled in these blanks, although the figures were apparently added while the documents were in Miller & Jacobs's control. In his deposition, Miller stated that his representation of the plaintiffs "was completed" in August 2011, after the releases had been returned.

Approximately two weeks after the return of the releases, the mother, now represented by new attorneys, filed a complaint that, after multiple amendments, alleged a claim for damages against the appellees arising from the auto accident. The appellees answered the complaint and raised a number of affirmative defenses, including that the claims were barred by settlement or accord and satisfaction arising from the prior release, as well as contributory negligence on the part of the mother and deceased driver. Progressive intervened in the action to address the limited issues of settlement, accord and satisfaction, and release. Progressive moved to enforce the purported settlement by dismissing the claims against the appellees, and to set a non-jury hearing to determine the validity and enforceability of the alleged settlement. The mother objected, arguing that the settlement issue should be submitted to a jury.

The trial court conducted an evidentiary hearing without a jury. After hearing deposition testimony from the mother, the father, Miller, Jacobs, and the Progressive employee, the trial court found in favor of the appellees and granted the motion to enforce the settlement. The trial court concluded that the parties had entered into a binding settlement agreement and that chapter 744 of the Florida Statutes did not require a different outcome. Accordingly, the trial court dismissed the children's claims and entered final judgment in favor of the appellees. This appeal followed.

## ANALYSIS

The appellants argue that the alleged settlement agreement was invalid because it did not comply with the requirements of chapter 744. Whether the alleged settlement required the approval of a court under chapter 744 is a question of law and, as such, is reviewed de novo. *Brown v. City of Vero Beach*, 64 So. 3d 172, 174 (Fla. 4th DCA 2011) ("[W]here the question involves interpretation of a statute, it is subject to *de novo* review."). "We review the trial court's factual findings for competent, substantial evidence." *Siewert v. Casey*, 80 So. 3d 1114, 1116 (Fla. 4th DCA 2012).

Section 744.3025(1)(b), Florida Statutes (2009), states that unless a guardian with no potential adverse interest to the minor has already been appointed, "the court *shall* appoint a guardian ad litem to represent the minor's interest before approving a settlement of the minor's claim in a case in which the gross settlement involving a minor equals or exceeds $50,000" (emphasis added). Although the appellees argue that the $25,000 earmarked to settle the claim of the deceased driver should not be included in the computation of the "gross settlement" for the purposes of this statute, the facts in the record indicate otherwise. The trial court found that Progressive globally tendered the $50,000 policy limit to settle all claims. This finding was supported by competent substantial evidence and leads to the inescapable conclusion that this was a case in which the universal settlement "involve[ed]" the minor children and was within the monetary range of the statute.

Further support for considering the full $50,000 as a single settlement "involving a minor" comes from the Florida Probate Rules. Rule 5.636(d), which was intended to mirror the requirements of section 744.3025, states:

> The court shall appoint a guardian ad litem on behalf of a minor, without bond or notice, with respect to any proposed settlement that exceeds $50,000 and affects the interests of the minor, if:
>     (1)     there is no court-appointed guardian of the minor;
>     (2)     the court-appointed guardian may have an interest adverse to the minor; or
>     (3)     the court determines that representation of the minor's interest is otherwise inadequate.

Fla. Prob. R. 5.636(d).[1] The committee notes for this provision provide a

---

[1] We note there is a discrepancy between the language in the statute and the language in the rule. Specifically, the statute's monetary threshold is met when a settlement "*equals or exceeds* $50,000" while the rule triggers only when the

useful illustration.

> The total settlement to be considered under subdivisions (d) and (e) is not limited to the amounts received only by the minor, but includes all settlement payments or proceeds received by all parties to the claim or action. For example, the proposed settlement may have a gross value of $60,000, with $30,000 payable to the minor and $30,000 payable to another party. In that instance the total proposed settlement exceeds $50,000.

Fla. Prob. R. 5.636 committee notes.

Because the pre-suit settlement in this case involved minors and totaled $50,000 or more, the trial court was required to appoint a guardian ad litem to represent the children's interest before approving a settlement that disposed of the children's claims. *See generally Sullivan v. Dep't of Transp.*, 595 So. 2d 219 (Fla. 2d DCA 1992) (referencing other chapter 744 statutory provisions to arrive at the conclusion that, when the monetary threshold amount is met in a pre-suit settlement, the minor's guardian (natural or appointed) must obtain the circuit court's approval of the settlement). Because the violation of section 744.3025(1)(b) is alone sufficient to require reversal, we do not need to address the appellants' other arguments for invalidating the purported settlement agreement.

## CONCLUSION

The record in this case indicates that Progressive, in good faith, left the amounts given to each injured party to be determined by the mother and her attorneys, Miller & Jacobs. However, Progressive and the two other appellees, as parties to the settlement agreement, had an obligation to ensure the settlement was legally binding. Because the proposed settlement did not comply with the requirements of section 744.3025, it was invalid as to the claims of the children. As such, the trial court erred by dismissing the children's complaint based upon that agreement. We

---

settlement "*exceeds* $50,000." (emphases added). The committee notes to Rule 5.636 makes no reference to this difference, but do note that the 2006 amendment revising the rule was intended "to reflect 2006 passage of new section 744.3025, Claims of Minors, increasing the dollar figure from $25,000 to $50,000 as the threshold for requiring appointment of guardian ad litem . . . ." We take this note describing the amendment to indicate that the rule is meant to mirror the statute and that any alteration of the language was incidental.

6

thus reverse for further proceedings in this case.

*Reversed.*

WARNER and CONNER, JJ., concur.

\*          \*          \*

**Not final until disposition of timely filed motion for rehearing.**